Gloria BANKS et al.,
Plaintiffs-Appellees,

v.

James L. TRAINOR, etc., et al.,
Defendants-Appellants.

Nos. 75–1621, 75–1861.

United States Court of Appeals,
Seventh Circuit.

Heard Sept. 19, 1975.

Decided Oct. 23, 1975.*

Certiorari Denied March 22, 1976.
See 96 S.Ct. 1484.

* This appeal was originally decided by unreported order on October 23, 1975. See Circuit Rule 28. The Court has subsequently decided to issue the decision as an opinion.

Joachim J. Brown, William J. Scott, Atty. Gen., Chicago, Ill., for defendants-appellants.

Lorelei Borland, Sheldon Roodman, James Weill and Nelson Soltman, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS, PELL and BAUER, Circuit Judges.

CUMMINGS, Circuit Judge.

This consolidated appeal is from the entry of a preliminary injunction by Judge Perry, sitting as emergency judge, as modified by Judge Kirkland, to whom the case was assigned for trial. The three named plaintiffs filed this complaint on their own behalf and on behalf of those similarly situated seeking to enjoin the defendants from reducing their food stamp benefits on the basis of a change to the "income method" of calculating food stamp benefits until the defendants provide them with an adequate advance notice of the proposed reduction, "including a full statement of all income, and deductions therefrom, taken into account in determining net food stamp income, which determines the monthly cost of food stamps and benefits to plaintiff class." The class consists of all persons in Illinois who were mailed a Notice of Reduction of Food Stamp Benefits and accompanying card pursuant to which their food stamp benefits for July 1975 and subsequent months were being reduced.

Under the Food Stamp Act (7 U.S.C. §§ 2011–2026), a household eligible to participate in the Food Stamp program may purchase stamps at a discounted value, which may then be used to purchase food at retail stores. The difference between the value of the stamps received (the coupon allotment) and the cost of the stamps to the recipient is a bonus (bonus value) providing increased food purchasing power.

Under 7 U.S.C. § 2014(b), the Secretary of Agriculture is required to estab-

lish uniform national standards of eligibility for participation by households in the Food Stamp program, and no plan of operation submitted by a state agency is to be approved unless the standards of eligibility meet those established by the Secretary. The Secretary's regulations provide the amount of a household's food stamp benefits be determined under the "income" method. See 7 CFR § 271.3. Through its Department of Public Aid, the State of Illinois participates in the federal Food Stamp Program. Prior to 1975, the defendants had calculated the bonus value of the food stamps on a percentage of the food allowance for an individual household; commencing on July 1, 1975, defendants changed to the income method as required by 7 CFR § 271.3(c). Under the income method, the bonus value is determined on the basis of "net food stamp income," which is defined as the household's gross income (7 CFR § 271.3(c)(1)) less certain deductions, such as medical expenses in excess of $10 a month, federal and state taxes, school tuition and fees, etc. See 7 CFR § 271.3(c)(1)(iii). Once the net food stamp income is calculated, the bonus value is determined according to the size of the household from a chart published by the United States Department of Agriculture (Complaint Exhibit D).

As a result of the conversion to the income method for determining the purchase price for food stamps, thousands of persons, including the three named plaintiffs, will be required to pay more for food stamps and therefore receive less bonus value for the same coupon allotment. The named plaintiffs and members of the class were informed of the change in method and reduction in benefits when defendants mailed them a Notice of Reduction of Food Stamp Benefits accompanied by a card indicating the amount of the reduction.

The Notice of Reduction contained a brief statement that because of a federally mandated change in the method of calculating food stamp benefits, the recipient's bonus value would be reduced; the accompanying card contained three figures, representing the recipient's income, the bonus value under the old method and the bonus value under the new method. Nothing sent to the recipient explained how the income method worked. The recipients were not told that the income figure on the card was net food stamp income, not gross income. Nor did the notice explain how that figure was calculated. In addition, the notice did not reveal the underlying data which the defendants used in determining net food stamp income. However, the notice did offer to provide, upon request, a detailed calculation under the income method. Recipients were also told they could appeal in writing to their local office within 60 days and that benefits would not be reduced if the appeal was filed within ten days.

The gravamen of plaintiffs' complaint is that under federal regulations and the due process clause of the Fourteenth Amendment, plaintiffs are entitled to adequate notice from defendants prior to any reductions in their benefits. Plaintiffs claim that the notice of reduction and accompanying card are deficient because they do not provide sufficient information to enable a member of plaintiff class to determine whether an error has been committed. Plaintiffs seek notices that will provide them with the reasons for the proposed agency action, including the foundation upon which the "income" figure is predicated and the deductions which are allowed by law. Such notices would include an explanation of how net food stamp income is calculated, recitation of the specific items of income and deduction used in the recipient's case and a chart enabling the recipient to determine whether he is receiving the amount of benefits to which he is entitled.

In granting a preliminary injunction after hearings on July 3 and 7, 1975, the district court found that the form Notice and accompanying card sent out by defendants do not contain information with regard to the method of calculating income or the information necessary to make that calculation or a chart setting

forth the allotment and purchase prices for different size households based on their food stamp income. The court also found that plaintiffs would adequately protect the interests of the class of persons receiving such Notice and card and that injunctive relief was appropriate with respect to the class as a whole.

In its conclusions of law, the district court held that the form Notice and accompanying card were contrary to the requirements of 7 CFR § 271.1(n)[1] and of the due process clause. Citing *Vargas v. Trainor,* 508 F.2d 485, (7th Cir. 1974), certiorari denied, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767, the court concluded that plaintiffs were likely to prevail on the merits of their claim. In balancing the equities, the court found that the harm to the plaintiffs outweighed any administrative inconvenience that would be experienced by the defendants. Consequently, the court entered a preliminary injunction enjoining defendants from reducing the food stamp benefits of the members of the plaintiff class pursuant to the form Notice and accompanying card "until such time that the members of the plaintiff class are provided with adequate advance notice of the reasons for the proposed reduction, including a full statement of all income, and deductions therefrom, taken into account in determining net food stamp income." Defendants were ordered to reinstate the food stamp benefits of the members of plaintiff class to the original benefit level. On July 15, 1975, we refused to stay this preliminary injunction.

After the entry of the July 7, 1975, preliminary injunction, the defendants promulgated Illinois Department of Public Aid Official Bulletin 75.6 (O.B. 75.6), dated August 5, 1975, superseding the official bulletin which was in effect when the preliminary injunction was entered, in an effort to comply with the preliminary injunction. Under O.B. 75.6, defendants' practice would be to "conduct a face-to-face interview with each food stamp recipient [being put on the income method for determining food stamp income], securing current up-to-date income and expense information from each food stamp recipient and calculating food stamp income under the new method" (September 15, 1975, Emergency Motion for Stay Pending Appeal, p. 3). Recipients would complete a two-page application for food stamps (DPA 683) requiring answers to 20 questions. Although an executed Form 683 contains information necessary for defendants to compute eligibility for food stamps and net food stamp income, the recipients are never told which items of information from Form 683 are taken into account as either income or deductions therefrom in order to calculate net food stamp income. After the recipients leave the case-workers' office, the case-workers compute income and deductions to arrive at a net food stamp income figure. This is done on defendants' Form DPA 683B entitled "Determination of Monthly Food Stamp Eligibility Income." O.B. 75.6 further provides that members of the plaintiff class whose food stamp benefits would be reduced based on the information obtained from the interview were to be mailed a Form DPA 157 containing the following statement:

"Your eligibility for food stamps has been redetermined and your net food stamp income has been computed. Your purchase requirement will be based on the net income basis of issuance as required by federal regulation (7 CFR 271.3)."

The DPA 157 also advised the recipients that they could meet with a representa-

---

1. 7 CFR § 271.1(n) provides:

"*Notice of adverse action.* (1) Prior to any action to reduce or terminate a household's program benefits within the certification period, the State agency shall except as otherwise provided in the following paragraph (n)(2) of this section, provide such household 10 days' advance notice before such action is taken. The notice shall explain the reasons for the proposed action, the household's right to request a hearing and the circumstances under which participation is continued if a hearing is requested."

tive of defendants to discuss the reduction and, if dissatisfied by this second interview, appeal the decision.

To prevent implementation of this policy, plaintiffs, contending that the notice provided in DPA 157 failed to comply with Judge Perry's order, petitioned Judge Kirkland for a modification of the preliminary injunction. On September 12, 1975, Judge Kirkland granted plaintiffs' motion, concluding that the Notice and procedures set forth in O.B. 75.6 did not comply with the terms of the preliminary injunction entered by Judge Perry and did not meet the requirements of due process.

He found that DPA 157 contained no statement of all income and deductions therefrom taken into account in determining net food stamp income and no explanation or statement with respect to the method of calculating net food stamp income. Additionally, he found that no information or statement with respect to the coupon allotment and purchase prices for different size households based on their food stamp income was provided to plaintiff class. Therefore, Judge Kirkland modified the preliminary injunction previously entered by enjoining defendants from reducing the food stamp benefits of members of the plaintiff class pursuant to the Notice and procedures set forth in O.B. 75.6. The defendants were required to reinstate the food stamp benefits of any member of plaintiff class which were reduced pursuant to O.B. 75.6. Finally, defendants were enjoined from reducing the food stamp benefits of members of the plaintiff class on the basis of conversion to the income method of calculating until the court should approve the prior written Notice to be sent to the members of the plaintiff class. On September 24, 1975, we refused to stay the preliminary injunction as modified. The Court now concludes that the preliminary injunction, as modified, should be affirmed.

*Propriety of Preliminary Injunction*

The preliminary injunction was entered to maintain the status quo. In such a case, an injunction may not be overturned except upon a showing of clear abuse of discretion. *Robinswood Community Club. v. Volpe,* 506 F.2d 1366 (9th Cir. 1974); *Hulburt Oil & Grease Co. of Pa. v. Hulburt Oil & Grease Co. of Illinois,* 346 F.2d 260, 263 (7th Cir. 1965), certiorari denied, 382 U.S. 835, 86 S.Ct. 78, 15 L.Ed.2d 77. The appropriateness of granting a preliminary injunction depends upon a balancing of several factors, including the likelihood of success on the merits, the lack of adequate remedy at law, the prospect of irreparable harm if the injunction is not issued and a comparison of the relative hardships imposed on the parties. *Burns v. Paddock,* 503 F.2d 18, 28 (7th Cir. 1974); *Tele-Controls, Inc. v. Ford Industries, Inc.,* 388 F.2d 48, 50 (7th Cir. 1967). No one factor is determinative; the district court should be flexible and is given discretion to fashion suitable temporary relief. See *International Controls Corp. v. Vesco,* 490 F.2d 1334, 1347 (2d Cir. 1974); *Hulburt Oil & Grease Co. of Pa. v. Hulburt Oil & Grease Co. of Ill., supra,* 346 F.2d at 263. The preliminary injunction granted below is a proper exercise of that discretion. See *Nelson v. Likins,* 389 F.Supp. 1234 (D.Minn.1974), affirmed, 510 F.2d 414 (8th Cir. 1975); *Buckles v. Weinberger,* 387 F.Supp. 328 (M.D.Pa.1974).

Under *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, and *Vargas v. Trainor,* 508 F.2d 485 (7th Cir. 1974), certiorari denied, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767, it would appear that the Notice and card sent to plaintiff class were deficient.[2] The No-

---

2. Defendants rely on *Basel v. Butz,* 66 F.R.D. 54 (D.D.C.1975), in which the court upheld the constitutionality of 7 CFR §§ 271.1(n)(1) and (2). In *Basel* the plaintiffs urged that it violated due process for the defendants to terminate food stamp benefits without advance notice and a hearing upon lapse of the recipients' certification. Under the Food Stamp Program households are certified to receive food stamps for a fixed period of time; the certification terminates automatically upon expiration of the fixed period, unless a new application for

tice states that the enclosed card shows the difference "between the way your food stamp benefits would have been calculated under the old method and under the 'income method.'" The card enclosed only gives a figure for income and bonus value under the old system and the income method. The Notice also states that the determination of how much the recipients must pay for food stamps "is going to be based upon your income." This is partially true, for net food stamp income, not gross income, is the criterion, and the Notice does not show what deductions or whether any deductions from gross income are available.

The Notices sent to this class did not contain a breakdown of income and deductions so that the recipients could determine the accuracy of the computations. Since the Notices do not inform recipients of what factors are relevant in determining net food stamp income, the plaintiff class cannot inform caseworkers of expenditures that should be used. Similarly, the plaintiff class was not informed by chart or otherwise of the allotment and purchase prices for different size households based on their food stamp income, so that members of the class can ascertain whether they are receiving the correct amounts of coupon allotment.

■ Both *Goldberg* and *Vargas* require detailed notice of adverse action as a protection against agency error and arbitrariness. Because the calculation of food stamp benefits under the income method requires an individualized determination of income, expenses and deductions for each recipient, due process requires full and adequate prior written notice.

Defendants contend that no notice is required under 7 CFR 271.1(n), *supra* n. 1, because under 7 CFR 271.1(n)(2)(i) individual notices of adverse action are not required for "Mass changes in benefits." [3] In view of the seeming applicability of the due process clause, it is unnecessary to resolve this matter. However, the exception of (n)(2)(i) appears to be inapplicable because the computation of each individual recipient's food stamp income requires an individual determination of his gross income and all allowable deductions.

The merits of the due process and regulation arguments are for resolution by the district court upon remand. We merely hold that plaintiffs have shown a sufficient probability of success to warrant the entry of the preliminary injunction.

In balancing the equities, the district court found that the plaintiff class would be irrevocably injured by the reduction in food stamp benefits and concluded that harm to their class far outweighed any possible harm to defendants. Before entering the preliminary injunction, the district judge recognized that defendants would suffer administrative inconvenience and cost. Nevertheless, the hardship to plaintiffs and their class was found to outweigh the administrative inconvenience and cost. See *Goldberg v. Kelly, supra,* 397 U.S. at 266, 90 S.Ct. 1011; *Nelson v. Likins, supra,* 389 F.Supp. at 1237–1238. The balancing of the equities was within permissible bounds.

certification has been processed. Because the administrative scheme considered in *Basel* did not involve any individualized determination of eligibility, the case is distinguishable. However, to the extent the court held that due process requirements do not apply to the termination of food stamp benefits, we disagree.

**3.** 7 CFR § 271.1(n)(2)(i) provides in relevant part:

"(2) Individual notices of adverse action are not required when:

"(i) Mass changes in benefits are required for certain classes of recipients because of changes required by Federal or State law or Federal Regulation affecting the basis of issuance tables, income standards, or other eligibility criteria. Such changes include, but are not limited to, changes in maximum income limitations and basis of issuance tables prescribed in the general notice published in the *Federal Register* pursuant to § 271.5, and changes in social security payments or public assistance grants."

Defendants contend that the district court should have permitted them to call two witnesses before entering the preliminary injunction. But defendants did not seek to call these witnesses until the trial court already announced its decision to enter a preliminary injunction on behalf of the class. Also, the affidavits of these two witnesses were already before the court. Therefore, defendants' interests were sufficiently protected. *Schlosser v. Commonwealth Edison,* 250 F.2d 478, 480 (7th Cir. 1958), certiorari denied, 357 U.S. 906, 78 S.Ct. 1150, 2 L.Ed.2d 1156.

The preliminary injunction was properly entered.

*Propriety of Modifications of Preliminary Injunction*

Nothing in the new procedures adopted by the defendants pursuant to O.B. 75.6 weighs in their favor the balancing of factors to be considered on a motion for a preliminary injunction. The notice given to members of plaintiff class through DPA 157 does not give them adequate notice of the reasons for the proposed reduction even though basic information concerning income and deductions taken into account in determining net food stamp income has been routinely processed by defendants on Form DPA 683B. Form DPA 157 does not explain the terms "purchase requirement" and "net income basis" used on the notice. Furthermore, it does not tell the recipients that any deductions are available at all in determining "net income basis and issuance," much less the deductions made in their individual cases. Since the new notices do not enable plaintiffs and their class to determine whether or not defendants' computations are accurate, the notices are still insufficient under *Goldberg v. Kelly, supra* and *Vargas v. Trainor, supra.*

Defendants state that because of the preliminary injunction and modified preliminary injunction they are presently forced to pay approximately 1.6 million dollars per month in food stamp benefits in excess of the amount to which food stamp recipients in Illinois are entitled. This unfortunate situation can be speedily remedied by their compliance with the modified injunction which we conclude was properly entered.

---

Rather than engaging in a lengthy trial on remand, the parties should work out a program which will provide plaintiffs and their class with the minimum necessary information at the least possible cost to defendants. Plaintiffs should only require the bare essentials from defendants in a good faith effort to ease the administrative burden. We are confident that the district judge will, if necessary, render his good offices in accomplishing such a settlement.

The orders granting the preliminary injunction and the modifications thereto are affirmed.