Sharon **MOORE**, Jimmie **Moore**, and **Johnny Jefferson**, individually and on behalf of all persons similarly situated, Plaintiffs,

v.

Jeffrey **MILLER**, Director of the Illinois Department of Public Aid; and the Illinois Department of Public Aid, Defendants.

No. 81 C 7265.

United States District Court, N.D. Illinois, E.D.

Dec. 6, 1983.

MEMORANDUM AND ORDER

MORAN, District Judge.

This action concerns the Illinois Department of Public Aid's (IDPA) administration of the Aid to Families with Dependent Children Program (AFDC). In question is IDPA's policy for determining eligibility for an earned income tax credit.

AFDC, Title IV–A of the Social Security Act, 42 U.S.C.A. §§ 601–615 (West Supp. 1982), is designed to enable dependent children and their families to "survive the hardships of poverty." *Simpson v. Miller*, 535 F.Supp. 1041, 1042 (N.D.Ill.1982). *See* 42 U.S.C.A. § 601; *Shea v. Vialpando*, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974). While funded with matching funds by the federal government, the programs are administered by the states. Participation by a state is voluntary, but once a state agrees to participate its administration of the program must conform to the provisions of the Social Security Act and the rules and regulations promulgated thereunder by the Department of Health and Human Services (DHHS). *See King v. Smith*, 392 U.S. 309, 316–17, 88 S.Ct. 2128, 2132–33, 20 L.Ed.2d 1118 (1968); *Simpson v. Miller*, 535 F.Supp. at 1044; *Cannon v. Illinois Department of Public Aid*, 76 Ill.App.3d 910, 912, 32 Ill.Dec. 502, 504, 395 N.E.2d 732, 734 (3d Dist.1979).

The amount of aid given to needy families is determined by the states. A participating state calculates a standard of basic needs for its citizens. A family's income and resources, as defined by the regulations, *see* 45 C.F.R. § 233.20(a)(6)(iii–ix), are compared to the calculated standard. If a family's income and resources are below that standard the family is eligible for AFDC benefits and the amount it receives is dependent upon the difference. *See* 45 C.F.R. § 230.20(a)(2)–(3) (1982); *Shea v. Vialpano*, 416 U.S. at 253–54, 94 S.Ct. at 1750; *Simpson v. Miller*, 535 F.Supp. at 1042–43. Obviously, the higher the family's income, as calculated by the state, the less AFDC assistance the family will receive.

Dorie Budlow, Cook County Legal Asst. Fund, Harvey, Ill., Thomas Grippando, Cook County Legal Asst. Fund, Maywood, Ill., for plaintiffs.

Owen M. Field, Steven Hogroian, Sp. Asst. Attys. Gen., Chicago, Ill., for defendants.

Under section 43 of the Internal Revenue Code, 26 U.S.C.A. § 43, an earned income credit (EIC) is granted for eligible low-income workers to supplement their income. To be eligible for an EIC the wage-earner must support a child who, for tax purposes, is considered a dependent of the recipient or the wage-earner must be unmarried and provide over half the support of the household. *See* I.R.C. §§ 2(a), 2(b) and 43(c). Dependency for tax purposes requires the individual claiming the dependent to supply the child with over half of the child's support. *See* I.R.C. § 152(a). For purposes of determining whether the wage-earner provides half of the child's support or half the support of the household, AFDC and certain other welfare payments count as support provided by the state and not by the wage earner. *See* 47 Fed.Reg. 5660 (1982). Thus, a wage-earner is only eligible for an EIC if AFDC and certain other transfer payments received are less than the wage-earner's income.

The Internal Revenue Code allows wage-earners eligible for an EIC to receive advance payment of the credit with their periodic wage payments if they apply for such with their employer. *See* I.R.C. § 3507. A wage-earner's EIC, whether paid in a lump sum at the end of the year or in the form of advance payments, is considered income for the purposes of determining eligibility for, and the amount of assistance receivable from, a state's AFDC program. *See* 42 U.S.C.A. § 602(d)(1). Under the regulations states are required to determine whether the AFDC recipient is eligible for an EIC and, if so, credit the recipient's monthly income with the amount of EIC advance payments that could be received if the individual applied for such. *See* 45 C.F.R. § 233.20(a)(6)(ix). This amount should be credited only if the state "reason-

ably expects that the individual will be eligible to receive the earned income credit for the current taxable year." 45 C.F.R. § 233.20(a)(6)(ix)(B)(1). The state is required to make the determination based upon the requirements specified in the Internal Revenue Code and the corresponding regulations which establish eligibility criteria for receipt of the EIC and its advance payments. *Id.*

Illinois participates in the AFDC program. The policy of the IDPA in determining eligibility of recipients for an EIC is set out in Regulation PO–615.4(g) of the state's AFDC manual. Regulation PO–615.4(g) states: "If the client is potentially eligible for the EIC payment, budget it as earned income even if the client does not receive the payment." *See also* Illinois AFDC Manual, PO–510.1(f). The IDPA credits wage-earners for receipt of the EIC without a determination of whether or not the wage-earner supplies over half the support of the wage-earner's child and is therefore eligible for the EIC. The state claims "[i]t is reasonable to expect that a working individual provides over one-half of his or her child's support."[1]

Plaintiffs Sharon and Jimmie Moore and their three children are recipients of AFDC. Mrs. Moore was employed for four months in 1981, earning approximately $1,300. Mr. Moore did not work. Over half of the Moore's support was provided by AFDC and other transfer payments. Because of this Mrs. Moore was not eligible for an EIC. Pursuant to its policies IDPA budgeted Mrs. Moore with a $35 EIC payment for November, 1981, and reduced the Moore's AFDC grant that month by $23. Plaintiff Johnny Jefferson and her four children are also AFDC recipients. In 1981 Ms. Jefferson received approximately

---

**1.** Plaintiffs allege that in determining whether a recipient is "potentially eligible" for an EIC payment, IDPA looks to the bare fact that the recipient is a wage earner. Defendants do not dispute that allegation so it is assumed to be true by the court. Some of the IDPA's regulations indicate that IDPA looks to more detailed criteria. *See* IDPA Regulation PR–510(e). These criteria include whether the recipient pays over half the cost of maintaining a household and whether

the child must be claimed as a dependent of the client qualifies as an unmarried head of household. Following these criteria would apparently require the type of investigation requested by plaintiffs, *i.e.*, an examination of whether the recipient provides one-half the child's support. From the briefs of both parties, however, it is clear that such an investigation is not being carried out by the IDPA.

$3,519 in gross earned income. Over half of the Jefferson's support was provided by AFDC and other transfer payments. For this reason Ms. Jefferson was not eligible for an EIC. Pursuant to its policies IDPA credited Ms. Jefferson with EIC payments of $41 and $36 in October 1981 and November 1981, respectively, and reduced the Jefferson's AFDC grant for 1981 by $52.

Plaintiffs brought suit in this court on behalf of themselves and all persons similarly situated against Jeffrey Miller, Director of the IDPA, and the IDPA itself. Plaintiffs are claiming IDPA policies concerning the crediting of EIC payments violate applicable federal regulations, applicable Illinois statutes, and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. Plaintiffs asked for declaratory and injunctive relief. The parameters of plaintiffs' class are not disputed by the parties. This court's jurisdiction rests on 28 U.S.C. § 1331. The court exercises pendent jurisdiction over the state claims. *See United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Before the court is plaintiffs' motion for preliminary injunction.

### Standards for Determination

 In granting or denying a request for a preliminary injunction this court must examine four factors: (1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (2) whether the plaintiff has at least a reasonable likelihood of success on the merits; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; and (4) whether the granting of a preliminary injunction will disserve the public interest. *Martin v. Helstad*, 699 F.2d 387, 389 (7th Cir.1983); *Atari Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 613 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). None of these factors is decisive and a court's decision must be based on a totality of the factors. *Reinder Brothers, Inc. v. Rain Bird Eastern Sales Corp.*, 627

F.2d 44, 49 (7th Cir.1980). Plaintiffs carry the burden of persuasion as to all the prerequisites to the granting of a preliminary injunction. *Ciechon v. City of Chicago*, 634 F.2d 1055, 1057 (7th Cir.1980).

### Irreparable Injury and Absence of an Adequate Remedy at Law.

Plaintiffs claim the class is being irreparably harmed by the IDPA's reduction in AFDC benefits. They claim the reduction in benefits deprive the class members of essential food, shelter and medical assistance. In addition, they claim the Eleventh Amendment bars the court from awarding back benefits. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The defendant, on the other hand, argues that the IDPA has a system for reimbursement of underpayments that will remedy any shortfalls in AFDC payments. Defendant also argues that since the injury to plaintiff is pecuniary a remedy at law could be created, refuting the claim of irreparable harm.

██ Generally, monetary damages, no matter how substantial, are not sufficient for a finding of irreparable harm. *American Hospital Association v. Harris*, 625 F.2d 1328, 1331 (7th Cir.1980). In the present case, however, those affected by the pecuniary loss are not corporations or average citizens, but are citizens in the "grip of poverty". *Nelson v. Likins*, 389 F.Supp. 1234, 1237 (D.Minn.1974), *aff'd* 510 F.2d 414 (8th Cir.1975). In *Nelson*, Judge Lord wrote:

> The loss to [plaintiffs] of a certain sum each month is much more of an injury than it is to the average individual. And it is the average individual who is the basis for the rule that the loss of money is not considered irreparable harm.

*Id.*

In Illinois the level of welfare benefits is designed to aid those requiring help "in meeting basic maintenance requirements for a livelihood compatible with health and well-being." Ill.Rev.Stat., ch. 23, § 4–1. "For qualified recipients, welfare provides the means to obtain essential food, cloth-

ing, housing, and medical care." *Goldberg v. Kelly*, 397 U.S. 254, 264, 90. S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). An unjustified decrease in welfare payments could deprive a recipient and the recipient's family of essential food, clothing, shelter and health care. A subsequent payment by the state cannot adequately compensate a recipient for being required to subsist for a period in a manner incompatible with health and well-being. For those in the "grip of poverty," living on the financial edge, even a small decrease in payments can cause irreparable harm. This court is unable to hold otherwise.[2] Findings of irreparable harm in the reduction of welfare benefits have been upheld by the circuit courts. *See Banks v. Trainor*, 525 F.2d 837, 842 (7th Cir.1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *Chu Drua Cha v. Noot*, 696 F.2d 594, 599 (8th Cir.1982), *mod. on denial of reh.*, 701 F.2d 750 (8th Cir.1983).

Defendants argue that, pursuant to federal regulations, IDPA reimburses current recipients for any underpayments made to the recipients. Current recipients, therefore, will be reimbursed for losses due to an incorrect crediting of the EIC. *See* 45 C.F.R. § 233.20(a)(13)(ii); Illinois Department of Public Aid Memorandum Re: Medical and AFDC Program Revisions (Aug. 27, 1981). As stated before, however, welfare recipients live on the financial edge with their health and well-being depending on the level of benefits received each month. An unjustified decrease in a month's payments causes serious harm for the recipient in the month of the shortfall. The possibility of future repayment is not sufficient to counter this harm.

One final consideration counsels this court in finding irreparable harm. Plaintiffs contend the possibility exists that certain class members may lose AFDC eligibility completely because of the IDPA's EIC policy. This could possibly happen if the wage-earner's child is primarily supported by someone other than the state, such as a separated spouse. If such a possibility

does exist it could mean a cutoff of not only AFDC benefits, but also Medicaid payments. Even though a four-month delay exists between cutoff of AFDC benefits and termination of Medicaid, the results of loss of medical care could be tragic. "Termination of benefits that causes individuals to forego such necessary medical care is clearly irreparable injury." *Massachusetts Association of Older Americans v. Sharp*, 700 F.2d 749, 753 (1st Cir.1983).

### Likelihood of Success on the Merits

■ Plaintiffs claim that IDPA's policy of assuming receipt of EIC payments for all wage-earners without an investigation of whether the recipient provides one-half of the child's or children's support violates a number of statutes and regulations. Plaintiffs argue that though exact certainty is not required the statutes and regulations require the state to make a determination based upon a number of Internal Revenue Service statutes and regulations that the recipient is reasonably certain to be eligible for an EIC. Defendants argue that the same statutes and regulations cited by plaintiffs allow states wide latitude in their determination of whether a recipient is eligible for EIC payments. Defendants argue that IDPA's policy of finding all wage-earning recipients eligible for EIC payments is reasonable and therefore sufficient under the regulations. They state:

Potential eligibility for an EIC payment depends on whether a child in an assistance unit is a dependent of the person claiming such a payment. I.R.C. § 43; 26 C.F.R. § 1.43–2. One criterion of dependency is that the person provides over one-half of the child's support. I.R.C. § 152(a); 26 C.F.R. § 1.152–1. It is reasonable to expect that a working individual provides over one-half of his or her child's support. Furthermore, it is reasonable that that individual can, and will, claim his or her child as a dependent

---

2. The court is mindful of the delay in reaching a decision on this motion. That delay, however, can have no bearing on a determination of irreparable harm. This is especially so in a case like the present one where the harm to plaintiffs is ongoing.

and, therefore, is potentially eligible on a federal tax return for an EIC payment. (Defendant's Mem. in Opposition at 10.) The crucial question is whether the statutes and regulations require a careful examination of EIC eligibility under the Internal Revenue Code or whether a reasonable assumption is enough. This court finds that a careful examination of EIC eligibility based on Internal Revenue statutes and regulations is required.

The court's investigation begins with 42 U.S.C. § 602(d)(1) (1981 Supp.), which reads:

> For purposes of this part [AFDC], an individual's "income" shall also include, to the extent and under the circumstances prescribed by the Secretary, an amount ... equal to the earned income advance amount (under section 3507(a) of Title 26) that is (or upon the filing of an earned income eligibility certificate, would be) payable to such individual.

Though the statute apparently restricts consideration of EIC payments as income to situations where the payments would have been "payable" to the recipient upon application, it gives the Secretary of DHHS wide latitude in determining how and when to credit EIC payments as income. This latitude, however, is not unrestricted. The state, in determining need, is required to take into consideration the income and resources of any child, parent or other relevant person. 42 U.S.C. § 602(a)(7) (West Supp.1982). The Supreme Court has explicitly stated that "[t]his regulation [§ 602(a)(7) ] properly excludes from consideration resources which are merely assumed to be available to the needy individual." *King v. Smith*, 392 U.S. at 319 n. 16, 88 S.Ct. at 2134 n. 16. *See Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). The Secretary, therefore, in promulgating regulations pursuant to section 602(d)(1), was required to ensure that states had more than an assumption of eligibility for EIC benefits.

The regulations promulgated under section 602(d)(1) fulfill this requirement. Under 45 C.F.R. § 233.20(a)(6)(ix)(B)(1) (1982) the state can only credit a recipient's income with an EIC payment when it "rea-

sonably expects that the individual is eligible to receive the earned income credit for the current taxable year." This expectation must be based upon

> the requirements specified in the Internal Revenue Code under 26 U.S.C. 43 and 3507, and under the corresponding regulations at 26 C.F.R. 1.43–1, 1.43–2, 31.-3507–1 and 31.3507–2, which establish eligibility criteria for receipt of the earned income credit and advance payments of the credit.

*Id.*

These regulations do not imply that a state is "reasonably certain" concerning EIC eligibility when it makes what it considers reasonable assumptions based loosely upon Internal Revenue Code rules. DHHS has recognized that many of the wage-earning recipients of AFDC "will not meet the EIC dependency test and thus will not be eligible to receive the EIC." 47 Fed.Reg. 5660 (Feb. 5, 1982). To provide for these recipients DHHS has explicitly stated that "reasonable certainty"

> requires the State agency to determine in advance whether an individual will be eligible to claim the earned income credit on his Federal income tax form for the current taxable year. The State agency must make that determination by applying the rules of the Internal Revenue Code which deal with the earned income credit and advance payments of the credit.

*Id.* Thus, DHHS regulations require the states to apply Internal Revenue Code rules in determining EIC eligibility for AFDC recipients.

An examination of the regulations and DHHS comments concerning the regulations clearly show that the calculation requested by the plaintiffs are expected to be carried out by the states. States are expected to apply 26 C.F.R. § 1.43–2 when determining whether they reasonably expect an AFDC recipient is eligible for an EIC. *See* 42 C.F.R. § 233.20(a)(6)(ix)(B)(1). That regulation states that an individual is only eligible for an EIC if the child can be claimed as a dependent, for which the indi-

vidual must provide over one-half the support, *see* I.R.C. § 151(e)(3), or if the individual furnishes over half the cost of maintaining the individual's household. *See* 26 C.F.R. § 1.43–2(c)(1)(i) (1982). It seems logical then that some examination of whether an AFDC recipient furnishes over half the cost of maintaining the household is required. DHHS literally stated this in an interim regulation when it required that "[i]n determining whether an individual meets the support or maintenance of a household test as required by the Internal Revenue Code, the State agency may not include the amount of AFDC received by the individual." 42 C.F.R. § 233.-20(a)(6)(ix)(B)(4) (1981). That regulation was deleted by DHHS because it was felt to be redundant in light of the Internal Revenue Code provisions that explicitly regulate EIC eligibility, but DHHS stated flatly that the agency wanted to highlight this particular rule and that "[t]his rule remains in effect." 47 Fed.Reg. 5661. It would be nonsensical for DHHS to stress a rule to such an extent when it has no intention of requiring that the investigation for which the rule is applicable be carried out. The regulations, therefore, require an application of the Internal Revenue Code provisions regarding EIC eligibility and require the state to determine whether an AFDC recipient furnishes at least half the household support, with AFDC and other transfer payments counting as support from another source.

A final question remains concerning how complete the state's calculation of EIC eligibility for AFDC recipients must be. The regulations call for reasonable certainty. 42 C.F.R. § 233.20(a)(6)(ix)(B)(1). DHH has been clear in stating that the state need not "determine in every case that, in fact, the individual will be eligible to receive the credit." 47 C.F.R. 5661. The state, however, must "establish that it can reasonably expect the individual to be eligible for the credit." *Id.* The "reasonably expect" standard is identical to the standard in 26 C.F.R. § 31.3507–2(a)(1) (1982), which is the level of certainty required for an individual to request advance EIC payments. An individual "reasonably expects" to receive an

EIC when the individual can answer "Yes" to the five questions on the EIC checklist on Form W–5 (1985) of the Internal Revenue Service, the form filled out by employees in order to receive advance EIC payments. *See* appendix to this memorandum and order. It is expected that the information will be filled in to the best of the individual's knowledge, but does not require perfection or additional investigation. This court believes the term "reasonably expects" in 26 C.F.R. § 31.3507–2 and 42 C.F.R. § 233.20(a)(6) refers to the same standard. If a state agency, with the information available to it, can answer the five questions on Form W–5 "Yes" for the individual, then the state can reasonably expect that the individual is eligible for an EIC and reduce the individual's AFDC payments accordingly. If the state cannot answer the five questions "Yes," or does not answer the questions at all, then it cannot assume the individual eligible for an EIC.

These five questions include two which are relevant to the present suit. First, it asks unmarried persons whether they expect to pay at least half the cost of keeping up their household. A footnote to that question states that AFDC payments do not count as money furnished by the unmarried individual. This question requires a totalling of the household's income from all sources in order to determine whether the individual provides at least half the support of the household. The state, in making its determination, would also be required to make this calculation. The second relevant question asks whether the individual seeking the credit expects to claim an exemption for the child. Since a requirement for claiming a child as a dependent is the providing of half the child's support, the expectation of claiming an exemption for the child can only come about if, after totalling up the child's actual support costs, the individual provides over half. This calculation would also be required to be performed by the state in answering the questions. Defendants are not obtaining answers to the five questions, or their equivalent, before determining that an AFDC recipient is eligible for

an EIC. Accordingly, their policies regarding determination of EIC eligibility conflict with federal law. The court finds that plaintiffs will likely succeed on the merits.[3]

### The Injury to Plaintiff Versus the Threatened Harm to Defendant

As already stated, this court finds that irreparable harm may result to plaintiffs if defendants are permitted to maintain their current policy concerning EIC eligibility. Against this harm defendants contend that the complexities of the Social Security Act and the Internal Revenue Code will greatly increase their administrative costs. The court finds that any burden placed on defendants by a preliminary injunction is heavily outweighed by the potential harm to plaintiffs. This result is especially apparent when the burden actually placed on defendants is examined. This court has required defendants to obtain answers to the same five questions required of individuals in filling out a Form W–5. The information required should already be within IDPA files and, in any event, can be readily obtained from each potential recipient.

### Public Interest

Justice Douglas, writing the opinion of the Court in *Goldberg v. Kelley*, wrote:

> From its founding the Nation's basic commitment has been to foster the dignity and well-being of all persons within its borders. We have come to recognize that forces not within the control of the poor contribute to their poverty. This perception, against the background of our traditions, has significantly influenced the development of the contemporary public assistance system. Welfare, by meeting the basic demands of subsistence, can help bring within the reach of the poor the same opportunities that are available to others to participate meaningfully in the life of the community. At the same time, welfare guards against the societal malaise that may flow from a widespread senses of unjustified frustration and insecurity. Public assistance, then, is not mere charity, but a means to "promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity."

397 U.S. at 264–65, 90 S.Ct. at 1019. The social import of a healthy welfare system that meets the basic demands of subsistence for the poor cannot be overestimated. The public, as well as the recipient, is injured when welfare benefits are unjustifiably reduced in response to an assumed but unrealized rise in a recipient's income. This is especially so with AFDC payments where children suffer the penalties for a mistaken assumption.

The requirements to be imposed by this injunction may increase the costs of welfare administration in this state by a small amount. Considering the harsh result to recipients, however, the court finds that this possible increase in cost does not damage the public interest as much as an unjustified decrease in AFDC payments for certain deserving recipients.

### Conclusion

For the foregoing reasons, this court grants plaintiffs' motion for a preliminary injunction. The court orders the IDPA to follow the guidelines laid down in this memorandum and order in determining EIC eligibility for AFDC recipients. This order will remain in effect until a final judgment has been delivered.

---

**3.** This court is somewhat puzzled by the necessity for a lawsuit. The determinations required by this court are also apparently required by IDPA's own regulations. *See* IDPA Regulation PR–510.1(e). For some reason the Department has either failed to follow PR–510.1(e) or has determined that it is reasonable to assume that all wage-earning recipients satisfy the requirements of PR–510.1(e). As stated, that assumption is not reasonable.

APPENDIX

# Form W-5 (1983) Earned Income Credit Advance Payment Certificate

For "Privacy Act" notice see back of form.

## Instructions

If you expect your 1983 adjusted gross income to be less than $10,000, you may be eligible for the earned income credit. Please read these instructions carefully. (Note: Your 1982 adjusted gross income was reported on Form 1040A, line 12, Form 1040EZ, line 3, or on Form 1040, line 32.)

**What Does the Earned Income Credit Do?.—**It can provide payments of up to $500 to taxpayers who have incomes under $10,000 and who have children living with them. If you are eligible for the credit, you can get it even if you owe no tax.

**Who Can Take the Earned Income Credit?.—**The checklist below will help you find out if you may be eligible for the credit. If you answer "Yes" to each question, you may be eligible for the credit. If you answer "No" to any question on the checklist, you are not eligible for the credit and should not fill in the certificate.

**Advance Payment of the Earned Income Credit.—**If you are eligible, you can choose to get the credit in advance with your pay instead of waiting until you file your tax return. You will get the credit on your annual tax return even if you do not complete this form.

To receive the credit in advance with your pay, fill in the bottom part of this form and give it to your employer. You may have only one certificate in effect with a current employer at one time. If you and your spouse are both employed, each of you should file a separate Form W-5.

**If Your Status Changes.—**If you file this form with your present employer and your status changes during 1983, you usually will have to fill out a new certificate.

If your status changes so that any answer in the earned income credit checklist becomes "No," or if you no longer want to receive advance payments, you must file a new certificate. Check the "No" box in question 1 on the new certificate to show

that you are not qualified or no longer want to get advance payments.

If your status changes because your spouse files a certificate with his or her employer, you must file a new certificate with your employer showing in question 2 that your spouse has filed.

**Additional Information.—**If you receive advance payments, you must file Form 1040 or Form 1040A for 1983.

If you receive advance payment of the earned income credit and later find out that you are not eligible, you will have to pay it back when you file your annual tax return.

If you are married and both you and your spouse are working, you should both review the Forms W-4, Employee's Withholding Allowance Certificate, you have on file with your employers to make sure that enough tax is being withheld.

This Form W-5 certificate expires on December 31, 1983. If you expect to qualify for the earned income credit in 1984, you must file a new certificate for 1984.

## Earned Income Credit Checklist

To find out if you may be eligible for the earned income credit, please answer the questions below for 1983.

| | Yes | No |
|---|---|---|
| A Do you expect the amount of your "Adjusted Gross Income" (including that of your spouse) to be less than $10,000? . | | |
| B Do you expect at least one of your children to live with you in the U.S. for all of 1983 except when he or she is away at school or on vacation?* . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| C Check and answer either (1) or (2) below, whichever applies. | | |
| (1) ☐ Married. Do you expect to file a joint return? . . . . . . . . . . . . . . . } . . . . . | | |
| (2) ☐ Not married. Do you expect to pay at least half the cost of keeping up a household this year?** . | | |
| D Do you expect all your earned income to be from sources inside the United States and not eligible for exclusion or exemption as foreign income or income from U.S. possessions? . . . . . . . . . . | | |
| E Do you expect to claim an exemption for a child who will live with you, OR do you expect to qualify as head of household because of an unmarried child who cannot be taken as an exemption? (If either answer is yes, check "Yes.") . . . . | | |

*The term child includes: Your son or daughter, your stepchild, adopted child, or a child placed with you by an authorized placement agency for legal adoption (even if the child becomes your stepchild or adopted child, or is placed with you, during the year); OR any other child you care for as your own child for the whole year, unless the child's natural or adoptive parents provide more than half of the support for that year.

**If you receive payments under the Aid to Families with Dependent Children (AFDC) program and use them to pay part of the cost of keeping up this home, you may not count these amounts as furnished by you.

▼ Give the lower part of this form to your employer; keep the top part for your records ▼

-------------------------------- Detach along this line --------------------------------

| Form **W-5**<br>Department of the Treasury<br>Internal Revenue Service | ## Earned Income Credit<br>## Advance Payment Certificate<br>· This Certificate Expires on December 31, 1983. | **1983** |
|---|---|---|

| Type or print your full name | Your social security number |
|---|---|

Home address (number and street or rural route)

City or town, State, and ZIP code

Note: If you file Form W-5 with an employer to receive advance payments of the earned income credit for 1983, you must file Form 1040 or Form 1040A for 1983. If married, you must file a joint return.

| | Yes | No |
|---|---|---|
| 1 I expect to be eligible for the earned income credit for 1983, I have no other certificate in effect with any other current employer, and I choose to receive advance payment of the earned income credit . . . . . . . . . . . | | |
| 2 If you are not married, check "No," OR . . . . . . . . . . . . . . . . . . . . . . . } | | |
| If you are married, does your spouse have a certificate in effect for 1983 with any employer? . . . . . . . . | | |

Under penalties of perjury, I declare that the information I have furnished above, to the best of my knowledge, is true, correct, and complete.

Signature ▶ Date ▶