**Krasaundra WARD, Akilah Bittle, Denise Miller, Yecenia Rivera and Philomena Collins, individually and on behalf of others similarly situated,**

v.

**Joyce THOMAS, Commissioner, Connecticut Department of Social Services.**

**Civ. No. 3–95–cv–1284 (JBA).**

United States District Court, D. Connecticut.

June 30, 1995.

Ruling Clarifying Decision July 5, 1995.

---

Kathleen Sullivan, Jerome N. Frank Legal Services Organization, Shelley White, New Haven Legal Assistance, New Haven, CT, and Shirley Bergert, Connecticut Legal Services, Inc., Willimantic, CT, for plaintiffs.

Hugh Barber, Richard Lynch, Peter Brown, Atty. General's Office, Hartford, CT, and John Hughes, U.S. Attorneys' Office, New Haven, CT, for defendant.

## RULING ON PLAINTIFFS' MO-TION FOR A TEMPORARY RESTRAINING ORDER

ARTERTON, District Judge.

Plaintiffs, recipients of Aid to Families with Dependent Children ("AFDC"), bring this action pursuant to 42 U.S.C. § 1983, on behalf of themselves and all persons similarly situated[1] against defendant, Joyce Thomas, Commissioner of the Connecticut Department of Social Services seeking declaratory and injunctive relief with respect to the defendant's intended reduction in subsistence AFDC benefits effective July 1, 1995.

---

1. Pursuant to Fed.R.Civ.P. 23(c)(1) the class described is conditionally certified and may be al-

Plaintiffs claim that defendant's failure to give plaintiffs and the class members timely and adequate notice prior to across-the-board AFDC benefit reductions, which defendant intends to implement on July 1, 1995 violates federal regulations and statutes, as well as the Due Process Clause of the Fourteenth Amendment.

Pending before the court is plaintiffs' motion for a temporary restraining order seeking to enjoin defendant from reducing AFDC benefits to the plaintiff class until legally adequate notice is sent to those recipients.

A hearing was held on June 29, 1995 on this application, and based on the record before the court at this time, plaintiffs' motion for a temporary restraining order will be granted.

## I. BACKGROUND

On or about May 31, 1995, the Connecticut General Assembly approved Senate Bill 929 which among other changes to the Connecticut AFDC program provides for certain AFDC benefits reductions effective July 1, 1995. On June 7, 1995, the Connecticut General Assembly approved House Bill 7010 which implemented the same benefit reductions as Senate Bill 929.

From approximately June 12 to June 14, 1995, defendant commenced implementation of the yet-to-be enacted Public Act 95–194 by mailing to approximately 45,000–50,000 Connecticut families and 160,000 individuals who receive benefits under the jointly funded federal-state AFDC program an undated notice (Appended) that effective July 1, 1995 a newly enacted state law would change the amount of AFDC benefits. This notice described in general terms a summary of the changes, but gave no individual calculations to any recipient.

The notice advises that "when these changes take effect, we will send you detailed notice explaining how the changes affect the amount you receive." The notice advises of a limited right to a hearing on computational errors only, without more, and is silent as to

tered or amended before decision on the merits.

the right of the individual recipients to a continuation of benefits pending a hearing.

Plaintiffs commenced this action following receipt of this notice on June 28, 1995 and prior to the July 1, 1995 effective date.

## DISCUSSION

■ The court may grant a motion for temporary restraining order if the moving party demonstrates a risk of irreparable harm and either a) a likelihood of success on the merits or b) the existence of sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships decidedly favoring the party requesting the relief. *Jackson Dairy, Inc. v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

### a) Irreparable Harm

■ As to the requirement of irreparable harm, the movant must show that the harm is "actual and imminent" not "remote or speculative." *State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 755 (2d Cir.1977). Many courts have found that reductions in welfare benefits, even by small amounts, constitute irreparable harm. *Beno v. Shalala,* 30 F.3d 1057, 1063 n. 10 (9th Cir.1994). See e.g. *Banks v. Trainor,* 525 F.2d 837 (7th Cir.1975); *Gorrie v. Heckler,* 606 F.Supp. 368 (D.Minn.1985); *Moore v. Miller,* 579 F.Supp. 1188 (N.D.Ill.1983); *Nelson v. Likins,* 389 F.Supp. 1234 (D.Minn. 1974).

Any decrease in benefits for individuals living in the "grip of poverty," such as AFDC recipients, could deprive them of their ability to obtain essentials such as food, clothing and housing. *Moore v. Miller,* 579 F.Supp. at 1191. The plaintiffs' summary of benefits chart, attached to their Complaint, and their affidavits, demonstrates clearly how financially precarious the plaintiffs are and how

vulnerable they are to *any* decrease in their subsistence benefit levels. Further, the proposed benefit reductions may completely terminate AFDC benefits to certain recipients. Accordingly, the court finds that plaintiffs have satisfactorily demonstrated that they have met the irreparable harm element for injunctive relief.

### b) Likelihood of Success on the Merits

Defendant maintains that the AFDC benefits reduction legislative enactment, which apparently became law on June 29, 1995 upon the Governor's signing, constituted a "change[ ] . . . in law requir[ing] automatic grant adjustments for classes of recipients," or what is called a "mass change" (in distinction to an "adverse action" based on the particular factors of an individual case).

The federal regulations applicable to public welfare programs, following the Supreme Court's dictates in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), require that AFDC recipients be given "timely notice" of "such grant adjustments." "Timely" is defined as notice mailed "at least ten days before the date of action, that is, the date upon which the action would become effective." [2] 45 C.F.R. 205.10(a)(4)(A).

Federal regulations also require that the notice to recipients of mass change in their benefits be "adequate," meaning:

> . . . a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued. 45 C.F.R. § 205.10(a)(4)(iii).

Plaintiffs assert that the Standard of Payment reductions called for under the new law

2. Because the notice in dispute was sent before this AFDC "grant adjustment" legislation became law, plaintiffs contend that the notice was "untimely" as a matter of law and that defendant was without authority to send out the notice, particularly purporting to represent that the law had been enacted when it clearly had not. This configuration of facts may be considered at a later date as to whether plaintiffs had a constitutional right to more specific notice of the consequences of the legislative enactment because the law became immediately effective and lacked a "grace period" during which individuals impacted by the benefit changes could have an opportunity to understand the new law's provisions, a question seemingly left open by the Supreme Court in *Atkins v. Parker,* 472 U.S. 115, 130–31, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985).

require individualized determinations[3], including whether a recipient lives in subsidized housing, a fact plaintiffs contend is highly subject to erroneous determination because of historically inadequate record keeping, in part because residence in subsidized housing has not previously been tied to determining levels of benefits as it will be under the new law. Thus, plaintiffs maintain that these changes constitute individual "adverse actions" and require, among other things, that plaintiffs be informed of the individual recomputation of their benefits and a sufficient factual basis for them to be able to ascertain or challenge the accuracy of the benefit change before the benefit is reduced or terminated.

On this record, this Court is making no determination at this time as to whether these changes constitute "mass changes" or individual "adverse actions." However, accepting *arguendo* defendant's view that the challenged notice to recipients need only satisfy the "mass change" adequacy standards, we find guidance in *Atkins v. Parker*, a federal Food Stamp Program reduction case. There, the U.S. Supreme Court assumed the accuracy of the proposition that a mass change in program benefits increased the risk of erroneous reductions in benefits, but nonetheless found adequate generalized notice of benefit reductions which lacked individualized computations of the exact financial impact on recipients, *because* the notice "plainly informed each household of the opportunity to request a fair hearing and the right to have its benefit level frozen if a hearing was requested." *Atkins v. Parker*, 472 U.S. 115, 128, 105 S.Ct. 2520, 2528, 86 L.Ed.2d 81 (1985). The key to the adequacy of the notice found by the Court was the fact that every affected household who followed the notice's bi-lingual instructions on how, when and where to request a hearing suffered no loss of benefit until, if any, after a fair hearing was held and a determination of computational accuracy made. "Thus, the

Department's procedures provided adequate protection against any deprivation based on an unintended mistake." *Id.*

Features of the *Atkins* notice's "adequacy" included:

a) a statement that the recipient had a right to a hearing "if you disagree with this action";

b) a representation that the recipient's benefits would be reinstated if the hearing was requested within ten days of the notice;

c) inclusion of a card for recipients to mail in to request a hearing;

d) written specification to recipients that the fair hearing could also be requested by telephone or in person.[4]

Here, in stark contrast, AFDC recipients received an undated notice, presumably mailed as represented by defendant's counsel June 12–14, 1995, whose sole information regarding the required "statement of the circumstances under which a hearing may be obtained and assistance continued"[5] was:

> Since these changes are the result of a change in State law, you *do not* have the right to a hearing. You only have the right to a hearing if the change is based on inaccurate information or if you think we made an error in calculating your benefit. (emphasis in original)

This notice is clearly in violation of the regulations in at least two respects. The underscored admonition of no hearing right is misleading, confusing and unjustifiably negative, and unreasonably discourages the exercise of a recipient's established right. Moreover, the regulations expressly provide that this determination must await the hearing stage, and is therefore improperly contained in the notice. 45 C.F.R. § 205.10(a)(6)(i)(A) *infra.*

Second, the notice is simply devoid of *any* information to a recipient that he or she is

---

3. Indeed the Department of Social Services' Policy Transmittal relative to P.A. 95–194 (Plaintiffs' Exhibit # 2) gives some support as it instructs that "[e]very recipient must be asked if he or she lives in any type of government subsidized or public housing."

4. *Supra* at 120, and fn. 14, 105 S.Ct. at 2524, and fn. 14. See also, *Foggs v. Block*, 722 F.2d 933 (1st Cir.1983).

5. 45 C.F.R. § 205.10(a)(4)(iii).

entitled to have the pre-reduction benefit level restored pending the outcome of a timely-requested hearing. Further, defendant's counsel acknowledged that because no recipient would (or could) request a hearing on a computational error claim *before* the benefit reduction took place (because it has already taken place), the recipient would *not* have his or her former benefit restored pending the outcome of the hearing, and could only have any error by the Department remedied by a retroactive payment. However, applicable federal regulations require that:

"(6) If the recipient requests a hearing within the timely notice period;

(i) Assistance *shall not be discontinued or terminated,* (but is subject to recovery by the agency if its action is sustained), *until* a decision is rendered after a hearing, unless:

(A) A determination is made at the hearing that the sole issue is one of State or Federal law or policy, or change in State or Federal law and not one of incorrect grant computation." 45 C.F.R. § 205.10(a)(6)(i)(A). (emphasis supplied)

From the record at this point, this apparent clear legal inadequacy of the notice and procedures failing to advise of and indeed intending to deprive of any right to restored benefits pending a timely requested fair hearing determination demonstrates plaintiffs' likelihood of prevailing on the merits and the propriety, in fact the necessity, of a temporary restraining order.[6] See *Turner v. Walsh,* 435 F.Supp. 707 (W.D.Mo.1977). Accordingly, it is hereby ORDERED that defendant and her agents are hereby restrained from:

Reducing benefits to families receiving AFDC without first sending to each such AFDC household prior written notice at least 10 days prior to the effective date of any proposed benefit reduction. Such notice must advise the AFDC household of the change, basis, and right to a fair hearing, how and when to request a hearing, and must advise that benefits will be restored pending a hearing determination. This order will expire on July 21, 1995 unless extended by the court for 10 days for good cause shown, or by agreement.

The plaintiffs shall not be required to post security since they are indigent.

## APPENDIX

Effective July 1, 1995, the Connecticut State Legislature enacted a law that will change the amount of AFDC benefits. Below is a summary of these changes and an explanation of how they will affect you.

The $50 excess rent special need payment will end. If you now receive an extra $50 in your AFDC benefits because your rent is high, you will no longer receive this extra payment.

Benefits will be reduced. Generally, the reduction will range from between $25 to $50. Large families may receive a larger decrease. We will send you a notice when we change your benefit. The notice will show the amount of the change.

We will count a portion of housing subsidies as income. This means that if you live in public housing or you receive section 8 or RAP, we will reduce your AFDC benefits further.

When your cash benefits are reduced your Food Stamp benefits may be increased. If we change your Food Stamp benefits, we will send you a notice that will show the amount of the change.

When these changes take effect, we will send you detailed notices explaining how the changes affect the amount you receive. Since these changes are the result of a change in State law, you do not have the right to a hearing. You only have the right to a hearing if the change is based on inaccurate information or if you think we made an error in calculating your benefit.

---

**6.** Given the presentation of constitutional and other statutory challenges to defendant's actions, serious questions of law are presented by plaintiffs, and the balance of hardships between plaintiffs' economic survival and defendant's administrative inconvenience and increased work clearly tips in plaintiffs' favor, thus satisfying the alternative requirements for injunctive relief. See *RAM v. Blum,* 533 F.Supp. 933, 940 (S.D.N.Y. 1982).

**406**

*RULING ON PLAINTIFFS' MOTION FOR CLARIFICATION OF TEMPORARY RESTRAINING ORDER*

July 5, 1995

On June 30, 1995, the defendant Joyce Thomas, Commissioner of the State of Connecticut Department of Social Services was temporarily restrained by order of the Court from "... [r]educing benefits to families receiving AFDC without first sending to each such AFDC household prior written notice at least ten days prior to the effective date of any proposed benefit reduction ..." The undated written communication issued by defendant's Department in mid-June was found by the Court to have been legally inadequate notice and in violation of the federal regulations applicable to "automatic grant adjustment" legislative enactment. (See Ruling on Plaintiffs' Motion for Temporary Restraining Order, dated June 30, 1995.)

Plaintiffs' motion, in lieu of a Motion for Contempt, seeks clarification that the court's order requires defendant to issue supplemental checks to all AFDC households to restore their benefits to levels in existence on June 30, 1995, in light of the fact that reduced AFDC benefits checks were issued by defendant, after notice of the hearing but before the ruling was entered.

In restraining the defendant from *reducing* benefits to AFDC recipients until defendant complies with federally required notice procedures, and to serve the court's stated purpose of avoiding the irreparable harm which was found would result from unlawful benefit reductions, it seems axiomatic that if the defendant has already proceeded to do that which she is restrained from doing, that she is required to take whatever action is necessary to restore benefits ordered not to be reduced.

At the hearing on June 29, 1995, defendant's counsel described that defendant had programmed its computers to send out reduced benefit checks, and that such reduced AFDC benefits had been mailed or would be mailed *before* the July 1, 1995 effective date for Public Act 95–194. Moreover, defendant's counsel represented that the majority of the reduced benefit checks were sent out at 10:30 a.m. on June 29, 1995, which is after notice of the court's hearing but earlier in the day before the hearing took place, (or, for some proportion of the checks, after the hearing on June 29, but before the ruling on June 30, 1995). Given these circumstances, and the defendant's apparent refusal to issue supplemental benefit checks to bring the Department into compliance with the court's order prohibiting benefit reductions without an additional "clarifying" order, it is hereby ORDERED that plaintiffs' Motion for Clarification is GRANTED and the Court's ruling is clarified to require that defendant take all steps necessary to effect a non-reduced benefit to AFDC recipients, including if necessary, issuance of supplemental benefits checks, until legally adequate and timely notice is given. It is FURTHER ORDERED that the defendant shall appear on Wednesday, July 19, 1995, at 11:00 a.m. to show cause why a preliminary injunction should not enter, as set forth in plaintiffs' motion. Briefs from both parties shall be filed with the Court no later that Friday, July 14, 1995.

It is so ordered.

Dated at New Haven, Connecticut, this 5th day of July, 1995.