Karen FOGGS, et al., Plaintiffs,
Appellees,

v.

John R. BLOCK, Defendant, Appellee.

Thomas Spirito, etc., Defendant,
Appellant.

Karen FOGGS, et al., Plaintiffs,
Appellees,

v.

John R. BLOCK, Defendant, Appellant.

Nos. 83–1270, 83–1320.

United States Court of Appeals,
First Circuit.

Argued Sept. 7, 1983.

Decided Dec. 7, 1983.

Ellen L. Janos, Asst. Atty. Gen., Government Bureau, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and James

A. Aloisi, Jr., Asst. Atty. Gen., Government Bureau, Boston, Mass., were on brief, for Massachusetts Com'r of Public Welfare.

Bruce G. Forrest, Appellate Staff, Dept. of Justice, with whom J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., William F. Weld, U.S. Atty., Nancy Serventi, Asst. U.S. Atty., Boston, Mass., Leonard Schaitman, Appellate Staff, Dept. of Justice, and Edward J. Barron, U.S. Dept. of Agr., Washington, D.C., were on brief, for appellant, United States of America.

J. Paterson Rae, Worcester, Mass., with whom Steven A. Hitov, New Rochelle, N.Y., was on brief, for Karen Foggs, et al.

Before COFFIN, Circuit Judge, FAIRCHILD,* Senior Circuit Judge, and BOWNES, Circuit Judge.

COFFIN, Circuit Judge.

Defendants, the United States Secretary of Agriculture and the Massachusetts Commissioner of Public Welfare, appeal a judgment of the district court for the District of Massachusetts. The district court held that the defendants deprived the plaintiffs of property without due process of law when they reduced plaintiffs' food stamp benefits without first providing them with constitutionally adequate notice. The district court ordered restoration of benefits pending provision of adequate notice or recertification of the recipients' files. The court also ordered extensive prospective relief, including the promulgation of new state regulations governing the form of future food stamp notices. We affirm the district court's conclusion that the notice provided by defendants was unconstitutional, but finding that the district court exceeded its authority with regard to remedy, we remand.

In August, 1981, Congress amended the Food Stamp Program, 7 U.S.C. §§ 2011–2029, reducing the earned income deduction from twenty to eighteen percent. Omnibus Budget Reconciliation Act of 1981, P.L. 97–35, 95 Stat. 257 (1981). This change required state agencies to include a greater portion of recipients' earned income when calculating benefits, which had the effect of reducing the food stamp entitlement of these recipients. Plaintiffs represent over 16,000 Massachusetts food stamp recipients whose benefits were reduced or terminated in accord with this across-the-board change in federal law.

In late November, 1981, the Massachusetts Department of Public Welfare sent a notice to all food stamp recipients with earned income advising them that their benefits would be reduced or terminated in accord with the statutory change in the earned income deduction. The notice did not indicate the specific amount of reduction, nor did it indicate the recipient's new benefit amount. The notice, which was dated merely "11/81", also advised recipients that they had a right to request a hearing "if you disagree with this action[,]" and that their benefits would be reinstated if they requested a hearing within ten days. The notice indicated that recipients could appeal by signing and returning a card that was enclosed, or by notifying the Department by phone or in person. The notice was printed in small type across the length of a standard size computer card (approx. 3″ × 7″). The notice was printed in English on one side of the card and in Spanish on the other.

Plaintiffs initiated this action in early December, 1981. They challenged the form of the November notice, alleging that it was incomprehensible to many recipients, that it contained too little information to allow a recipient to determine if a calculation error had been made, and that there was no way for a recipient to know the date by which he had to file an appeal. Contending that any benefit reduction prior to the delivery of constitutionally adequate notice would constitute deprivation of property without due process of law, plaintiffs sought restoration of benefits and other equitable relief. The district court issued a temporary restraining order on December 16, 1981 prohibiting the reduction or termination of benefits based upon the November notice. The Department of Public Welfare subsequently restored December bene-

* Of the Seventh Circuit, sitting by designation.

fits to prior levels for all recipients with earned income.

In late December the Department sent out a second notice. That notice was printed on two computer cards. One card explained that the November notice was invalid because it had not been properly dated and that benefits had therefore been temporarily restored. That card also discussed recipients' appeal rights. The second card contained a notice virtually identical to that mailed in November, except that it was dated "December 26, 1981".[1] Again, the cards were printed in English and Spanish. Plaintiffs then filed a supplemental complaint challenging the adequacy of the December notice and sought a second temporary restraining order enjoining any benefit reductions or terminations based upon the notice. The court rejected the motion for a

temporary restraining order on December 31, 1981.

In March, 1983, following a two day trial the district court concluded that the December notice was constitutionally inadequate because it failed to provide the recipients with sufficient notice of the benefit reduction, was untimely, was incomprehensible to many of the recipients, and did not include financial data for each individual recipient. The district court ordered the Department to restore benefits lost due to the change in earned income deduction. Specifically, the court ordered the Department to restore benefits lost between January 1, 1982 and the date the recipient received adequate notice, had his benefits terminated for a reason unrelated to the change in the earned income deduction, or had his file recertified.[2] The district court also ordered

1. The English version of the December notice read as follows:

December 26, 1981    MASSACHUSETTS DEPARTMENT OF PUBLIC WELFARE    PAGE 2
18%

*** IMPORTANT NOTICE – READ CAREFULLY ***

RECENT CHANGES IN THE FOOD STAMP PROGRAM HAVE BEEN MADE IN ACCORDANCE WITH 1981 FEDERAL LAW. UNDER THIS LAW, THE EARNED INCOME DEDUCTION FOR FOOD STAMP BENEFITS HAS BEEN LOWERED FROM 20 TO 18 PERCENT. THIS REDUCTION MEANS THAT A HIGHER PORTION OF YOUR HOUSEHOLD'S EARNED INCOME WILL BE COUNTED IN DETERMINING YOUR ELIGIBILITY AND BENEFIT AMOUNT FOR FOOD STAMPS. AS A RESULT OF THIS FEDERAL CHANGE, YOUR BENEFITS WILL EITHER BE REDUCED IF YOU REMAIN ELIGIBLE OR YOUR BENEFITS WILL BE TERMINATED. (FOOD STAMP MANUAL CITATION: 106 CMR:364.400)

YOUR RIGHT TO A FAIR HEARING:

YOU HAVE THE RIGHT TO REQUEST A FAIR HEARING IF YOU DISAGREE WITH THIS ACTION. IF YOU ARE REQUESTING A HEARING, YOUR FOOD STAMP BENEFITS WILL BE REINSTATED AT THE CURRENT AMOUNT IF YOUR APPEAL IS RECEIVED BY THE DIVISION OF HEARINGS WITHIN 10 DAYS OF THE DATE AT THE TOP OF THIS PAGE. IF YOUR APPEAL IS DENIED, THE DEPARTMENT HAS THE RIGHT TO RECOVER FROM YOU ANY ADDED BENEFITS WHICH YOU RECEIVED DURING THE APPEAL PROCESS. YOU MAY STILL APPEAL THIS ACTION AFTER TEN DAYS, BUT YOU MUST DO SO WITHIN 90 DAYS OF THE DATE AT THE TOP OF THIS PAGE. OTHERWISE, YOUR REQUEST FOR A FAIR HEARING AFTER THAT DATE WILL BE DENIED. TO REQUEST A FAIR HEARING, YOU MUST SIGN AND DATE THE ENCLOSED CARD ON WHICH YOUR NAME AND ADDRESS ARE PRE-PRINTED AND MAIL IT TO: DIVISION OF HEARINGS, P.O. BOX 167, ESSEX STATION, BOSTON, MA 02112. IF YOU HAVE QUESTIONS CONCERNING THE CORRECTNESS OF YOUR BENEFITS COMPUTATION OR THE FAIR HEARING PROCESS, CONTACT YOUR LOCAL WELFARE OFFICE. YOU MAY FILE AN APPEAL AT ANY TIME IF YOU FEEL THAT YOU ARE NOT RECEIVING THE CORRECT AMOUNT OF FOOD STAMPS.

2. Applications for food stamps are approved, or certified, for discrete periods of time known as "certification periods". These periods run from one to twelve months. 7 U.S.C. § 2012(c). At the expiration of the certification period the recipient's entitlement to food stamp benefits lapses. In order to continue to receive benefits the recipient must file a new application and once again demonstrate eligibility. This process is referred to as "recertifi-

cation." See Banks v. Block, 700 F.2d 292, 295 (6th Cir.1983).

The state was not informed by the court that its December notice was inadequate until the district court issued its order on March 24, 1983. By that time the files of all recipients with earned income had been recertified. Thus the practical effect of the district court's order was to require supplementary benefits for the

that all future food stamp notices issued by the Department include various data, including the old and new benefit amount, and that the Department issue regulations, subject to court approval, governing the form of future food stamp notices.

On appeal defendants contend that the notice issued by the Department satisfied constitutional requirements and that the district court abused its discretion in ordering the restoration of benefits and the promulgation of new notice regulations.

## I. Adequacy of Notice

Before applying due process analysis a court must find that there has been a deprivation of life, liberty, or property. *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–2706, 33 L.Ed.2d 548 (1972). The government defendants argue that these food stamp recipients were not deprived of property because they were entitled only to that level of benefits authorized by statute. Since the December reductions merely reduced benefit levels in accord with a statutory mandate, the government argues that food stamp recipients had no further entitlement to the original higher level of benefits. Observing that recipients had no entitlement to or property interest in the original benefit level after the statutory change, the government concludes that recipients were not deprived of any property when their benefits were reduced and that, therefore, due process analysis is inapplicable to the reduction and termination of these recipients' food stamp benefits.

This argument has some surface appeal but its limitations may best be illustrated by imagining the consequences of its adoption. If no one could claim a property interest or entitlement that in any way exceeded statutory authorization, then very few public assistance recipients would be entitled to the protections of due process. Whenever the government moves to reduce or terminate benefits it does so because it believes that the recipient has received more than the statute authorizes. Under the government's rationale these recipients would not be entitled to due process be-

cause they could claim no property interest in any benefits exceeding those authorized by statute. This situation would, of course, place recipients in an untenable position: the only recipients with a property interest would be those whose reductions exceeded those required by statute, but no one could know who these were if there was no opportunity for notice, objection, and redetermination.

■ Our own view, placing the argument of the government in proper perspective, is as follows. Public distributive programs are subject to majority action, i.e., Congress, which can increase, decrease, and terminate benefits. So long as the programs exist, people have the right to participate in accordance with the established ground rules. When it can be said that there is no further right because there is nothing in which to participate, then it must also follow that at that point there is no property interest. To the extent, however, that an individual's right to participate in accordance with preestablished ground rules still exists and that government action may possibly have adversely affected that right to participate, it must follow that there remains a property interest.

■ Although no other court has explicitly so addressed this question, the notion that statutory reductions infringe a protected property interest appears to have been uniformly accepted by courts considering statutory modifications in federal public assistance programs. *E.g., Garrett v. Puett,* 707 F.2d 930 at 931 (6th Cir.1983) (due process analysis applied to notice announcing statutorily mandated reduction in A.F.D.C. benefits); *LeBeau v. Spirito,* 703 F.2d 639, 643–44 (1st Cir.1983) (due process analysis applied to notice announcing statutorily mandated reduction in A.F.D.C. benefits); *Banks v. Trainor,* 525 F.2d 837, 841 (7th Cir.1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976) (due process analysis applied to notice announcing statutorily mandated reduction in food stamp benefits); *Velazco v. Minter,* 481 F.2d 573, 576–78 (1st Cir.1973) (due process analysis

period between January 1, 1982 and the recerti-      fication of the recipients' files.

applied to notice announcing statutorily mandated changes in old age assistance benefits); *Philadelphia Welfare Rights Organization v. O'Bannon,* 525 F.Supp. 1055, 1058 (E.D.Pa.1981) (due process analysis applied to notice announcing statutorily mandated reduction in food stamp benefits); *Willis v. Lascaris,* 499 F.Supp. 749, 755 (N.D.N.Y.1980) (due process analysis applied to notice announcing statutorily mandated reduction in food stamp benefits). Accordingly, we conclude that the district court properly found that in recalculating the benefits of these food stamp recipients the Department infringed a property interest subject to the full protection of the Fourteenth Amendment.

Having found that the benefit reduction deprived food stamp recipients of property, the district court proceeded to analyze whether the recipients had been afforded due process. Applying the balancing test first enunciated in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the court found that the private interest involved, the right to food stamps, is very important; that there was substantial risk of erroneous deprivation owing to the need for an individual determination of each recipient's income and expenses at a time when there was a data processing backlog at the Department's computer facility; that the risk of error was enhanced by the content of the notice, which did not specify the amount of the benefit reduction or whether the benefit was being reduced or terminated; that the notice contained insufficient information to allow a recipient to determine if an error had been made; that additional safeguards would reduce the risk of error and would be of great value; and that the government's interest in not providing meaningful notice is minimal. Thus the court concluded that the Department had failed to provide recipients with constitutionally sufficient notice.

In reaching its conclusion the court noted not only that the content of the notice was deficient, but that the form of the notice was constitutionally inadequate owing to its unfamiliar language, poor composition, small print, exclusive use of capital letters, and excessive line length. Additionally, the district court found that the Department had failed to comply with the notice requirements of the Food Stamp Act, 7 U.S.C. § 2020(e)(10), and its accompanying regulations, 7 C.F.R. §§ 273.12(2)(ii) & 273.13(a).

■ The district court's findings of fact are reviewable only for clear error. *E.g.,* Fed.R.Civ.P. 52(a); *Fortin v. Commissioner of Mass. Dept. of Public Welfare,* 692 F.2d 790, 794 (1st Cir.1982). The same standard of review applies in this circuit to mixed questions of law and fact. *E.g. Lynch v. Dukakis,* 719 F.2d 504 at 513 (1st Cir.1983); *Sweeney v. Board of Trustees,* 604 F.2d 106, 109 n. 2 (1st Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980) ("This circuit has applied the clearly erroneous standard to conclusions involving mixed questions of law and fact except where there is some indication that the court misconceived the legal standards." (citations omitted)). *See Pullman Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Holmes v. Bateson,* 583 F.2d 542, 552 (1st Cir.1978).

In concluding that the December notice failed to provide constitutionally adequate notice, the district court applied the appropriate legal standard, the *Mathews* balancing test. Our task, therefore, is limited. We may reverse the district court's conclusion only if our review of the entire record leaves us with the "definite and firm conviction that a mistake has been committed". *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ Our review of the record reveals ample support for the court's conclusion that the December notice was difficult to read, relatively difficult to comprehend, ambiguous (in that it indicated only that benefits would be reduced *or* terminated), and that it lacked the specific information necessary to allow recipients to determine if a calculation had been made. Certainly we find no indication that the court committed clear error.

The district court required the provision of specific notice because it found that there was a high likelihood that recipients'

benefits would be miscalculated as a result of the statutory change in the earned income deduction. The government challenges this conclusion, pointing out that the change in benefits was executed by a simple change in the Department's computer program. The computer was simply instructed to ignore eighteen instead of twenty percent of the recipients' earned income. Since this process did not require the collection or entry of any new recipient data, the government argues it was really the simplest change imaginable.[3] As long as the computer was correctly reprogrammed, all of the new benefit amounts would be correct. If the computer was incorrectly reprogrammed, all of the benefits would be wrong. Thus the government argues both that the risk of error in this situation is very low, and that any errors that do occur should be obvious. Therefore, the government contends that specific individual notice should not have been required.

■ While the government's position is appealing in theory, we do not find clearly erroneous the district court's conclusion that there was substantial risk of calculation error. The district court found that the notices were prepared and mailed at a time when there was a significant data processing backlog at the Department's computer facility. As a result of this backlog the files of some recipients did not contain accurate information. The government admits that application of the new calculation formula to inaccurate data would result in an erroneous benefit payment. The recipients in this case, who were advised only that their benefits would be reduced or terminated, had no way of knowing whether their benefits had been correctly computed or whether an error had been generated by the use of inaccurate or out-dated data. Moreover, this was a very confusing time for many of the recipients owing to concomitant changes in other federal assistance programs. Given these circumstances it was not unreasonable for the district court to conclude that the December notice was inadequate. These recipients may have been well informed about their right of appeal, but they did not have enough information to know whether or not to exercise that right.

The district court's conclusion that the risk of error was significant may have been influenced by the results of a random sample of the files of 5,013 households that received the December notice. That sample revealed that the notice was mistakenly sent to 585 households with no earned income and that the benefits of 211 of these households were erroneously altered. In addition, thirteen other households with earned income received the notice even though their benefits were not affected. We repeat this finding only to demonstrate that a number of errors did occur, the simple ministerial nature of the change notwithstanding.

In affirming the court's conclusion that the December notice was constitutionally inadequate, we stress the limited scope of our review and the combination of factors and circumstances that prompted the district court to require more specific notice.[4]

3. The government distinguished this situation, which merely involved the application of a new calculation formula to pre-existing file data, to an initial determination of eligibility, which involves the collection and verification of new data. The government contends that the risk of error is significant in the latter situation, but not in the former.

4. The government relies on our decisions in *LeBeau v. Spirito*, 703 F.2d 639 (1st Cir.1983) and *Velazco v. Minter*, 481 F.2d 573 (1st Cir. 1973) in arguing that the December notice exceeded constitutional requirements. While those decisions indicate that the requirements of due process are flexible and may vary depending on circumstantial factors, they do not support the notion that due process analysis is inapplicable to the mass change context. In *LeBeau* this court merely suggested that a notice substantially more specific than that challenged here satisfied constitutional standards. *Velazco* involved statutory changes to a number of public assistance programs, which resulted in a net *increase* in benefits. In that situation we indicated that due process required only that recipients receive notification regarding their right to appeal. Our conclusion was influenced by our determination that requiring additional notice would delay implementation of the benefit increase. 481 F.2d at 578. The situation presented in this appeal is, of course, quite different and calls for the application of a different standard.

We note, too, that while the court's judgment is consistent with that rendered by other courts faced with challenges to similar notices, *e.g., Banks v. Trainor,* 525 F.2d 837 (7th Cir.1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *Philadelphia Welfare Rights Organization v. O'Bannon,* 525 F.Supp. 1055 (E.D.Pa.1981), the court did not go as far as have other courts in requiring specific notice, *see, e.g., Dilda v. Quern,* 612 F.2d 1055 (7th Cir.1980), *cert. denied sub nom., Miller v. Dilda,* 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980) (State agency implementing benefit reduction required to supply each A.F.D.C. recipient with a copy of the agency worksheet used to recalculate recipient's benefits).

■ In addition to finding the notice unconstitutional the district court ruled that "the December notice violated the advance notice requirements of 7 U.S.C. section 2020(e)(10) and 7 C.F.R. section 273.-12(e)(2)(ii)". The court also found that the notice had to comport with the requirements of 7 C.F.R. section 273.13(a).

We agree that the notice failed to meet statutory requirements, but find that the notice was not required to comply with the dictates of 7 C.F.R. § 273.13(a). 7 C.F.R. § 273.13(a) requires state agencies to provide individual notice of any "adverse action" at least ten days before the action will become effective and specifies the information a "notice of adverse action" must contain. But these requirements are not applicable to this food stamp reduction because section 273.13(b)(1) exempts mass change notifications from the requirements of § 273.13(a).

■ Although these recipients were not entitled to a "notice of adverse action" as that term is defined in § 273.13(a), they were entitled to meaningful advance notice. 7 U.S.C. § 2020(e)(10) implies that advance

notice of any benefit reduction is required in the mass change context. The statute explicitly allows state agencies to provide notice "as late as the date on which the action becomes effective" if the benefit reduction was instigated by the state's receipt of "a written statement containing information that clearly requires a termination or reduction ... [of] benefits", but it appears to require the provision of advance notice in all other circumstances.[5] Any ambiguity in the statute is resolved by 7 C.F.R. § 273.12(e)(2)(ii) which provides, in part, that "[a] notice of adverse action is not required when a household's food stamp benefits are reduced or terminated as a result of a mass change in the public assistance grant. However, State agencies shall send individual notices to households to inform them of the change". The district court found the December notice unconstitutional because the notice failed to convey meaningful information to affected recipients. We believe the notice failed to satisfy statutory requirements for the same reason—the notice in question failed to inform recipients. We doubt that Congress intended a constitutionally deficient notice to satisfy the statutory notice requirement and thus we affirm the district court's conclusion that the December notice failed to satisfy the notice requirements of 7 U.S.C. § 2020(e)(10) and 7 C.F.R. § 273.12(e)(2)(ii). *See Philadelphia Welfare Rights Organization v. O'Bannon,* 525 F.Supp. 1055, 1061 n. 7 (E.D.Pa.1981.)

## II. Remedy

Finding that the December notice failed to provide constitutionally sufficient notice, the district court ordered the restoration of benefits pending delivery of constitutionally adequate notice, termination of the recipient's participation in the food stamp program for reasons unrelated to the change in

---

**5.** 7 U.S.C. § 2020(e)(10) provides, in part, that: "[A]ny household which timely requests ... a fair hearing after receiving individual notice of agency action reducing or terminating its benefits within the household's certification period shall continue to participate and receive benefits ... except that in any case in which the State agency receives from the

household a written statement containing information that clearly requires a reduction or termination of the household's benefits, the State agency may act immediately to reduce or terminate the household's benefits and may provide notice of its action to the household as late as the date on which the action becomes effective."

the earned income deduction, or expiration of the recipient's certification period. The court also ordered the Massachusetts Commissioner of Public Welfare to include specified data in future food stamp notices and to draft and submit for approval new regulations governing the form of such notices. We believe the district court erred in ordering such wide ranging relief.

■ The restoration of benefits to all recipients was unwarranted, given the absence of any showing that a substantial percentage of these recipients had their benefits improperly reduced or terminated. Restoration of benefits would constitute a windfall to recipients and would result in the continuation of benefits at a level exceeding that authorized by Congress. Nor would a policy of restoration provide any incentive to state agencies to give adequate notice in the future. Since the federal government finances the food program (except for 50 percent of the program's administrative costs, which are paid for by the states), states giving inadequate notice would merely find themselves ordered to restore the original, higher level of benefits at the expense of the federal government. State agencies might even find this an attractive possibility, inasmuch as it would have the net effect of temporarily protecting the state's recipients from the effect of statutory benefit reductions. Courts must design remedies that will encourage the states to carry out Congress' intent and provide constitutional notice. A policy of wholesale benefit restoration might frustrate that goal.

Superficially, the most appropriate way to remedy a constitutionally inadequate notice would be to order the provision of adequate notice. Unfortunately, this solution would not be helpful in the present situation. The state implemented the benefit reduction challenged here in January, 1982. It would be very difficult, if not impossible, to provide the affected recipients with meaningful, understandable no-

tice at this late date. Most likely such a notice, which would have to refer to events and figures almost two years old, would merely confuse recipients.

■ Rather than require recipients to decipher yet another notice and exercise their right to appeal, we believe it makes more sense to require the Department of Public Welfare to check its files to ensure that the Department properly calculated the benefit reduction of each recipient with earned income. If the Department finds that a recipient's benefits were improperly recalculated, it should provide the recipient with any benefits due for the period beginning January 1, 1982 and ending on the date the recipient's file was next recertified or the recipient's participation in the food stamp program was terminated for reasons unrelated to the change in the earned income deduction, whichever occurred first.[6] The district court should ensure that the state's review of its files is thorough and accurate and it may wish to solicit the views of counsel on how this may best be accomplished.

In short, we are substituting this opportunity for review of the Department's calculations for the opportunity a proper notice would have afforded recipients. This procedure, which was suggested as an alternate remedy by the state on appeal, is not a perfect substitute for the provision of constitutional notice. But it will result in the restoration of benefits wrongfully reduced while placing the burden of the state's error on the state where it belongs. At this juncture that appears to be the most we can accomplish.

■ Although the state's notice was inadequate, we find nothing in the record to indicate that the Department acted in bad faith. We have no reason to doubt that the state will strive to provide constitutional notice in the future. Indeed, we note that our court has already suggested that the state supplied adequate notice in a very

---

**6.** The state defendant argues that the district court's order requiring the restoration of benefits violates the Eleventh Amendment's prohibition on the recovery of money damages from the states. Since the cost of the food stamp program is borne by the federal government, we see no Eleventh Amendment bar to ordering the restoration of benefits. The state may incur some administrative costs, if it has to restore benefits, but these should be de minimis.

similar situation involving statutory reductions in the Aid to Families with Dependent Children (AFDC) program. *LeBeau v. Spirito,* 703 F.2d 639 (1st Cir.1983). Accordingly, we conclude that the district court placed an improper and unnecessary burden upon the Department when it specified the form of future notices and required the submission and promulgation of new notice regulations.

*The judgment of the district court is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. Each party shall bear its own costs on appeal.*