**Domingo COLON, Concepcion Acevedo, Felix Perez, Jose Morales and Luis Vazquez, Plaintiffs,**

v.

**CASCO, INC., Defendant.**

**Civ. A. No. 86–0177–F.**

United States District Court, D. Massachusetts.

June 13, 1989.

---

**20.** *See also Developments in the Law—Toxic Waste Litigation,* 99 Harv.L.Rev. 1458, 1565 (1986).

J. Paterson Rae, Western Mass. Legal Services, Springfield, Mass., for plaintiffs.

Brian E. Hayes, James M. Trono, Springfield, Mass., for defendant.

MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

## I.

This is an appeal from a decision of United States Magistrate Michael A. Ponsor following a consented-to trial in accordance with 28 U.S.C. § 636(c). The appeal involves claimed violations of the Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. §§ 1801 *et seq.* ("AWPA"), and the question of whether the Court should have allowed prejudgment interest. The petition of appeal is before this Court, pursuant the parties' further consent under 28 U.S.C. § 636(c)(4), "as on appeal from a judgment of the district court to a court of appeals."

At issue are the Magistrate's determinations regarding the appellant/employer's termination of the appellees/employees, appellant's adherence to certain sign posting requirements and the Magistrate's denial of prejudgment interest. Appellees have also raised question as to this Court's jurisdiction by way of a motion to dismiss the appeal based on the manner in which appellant filed the notice of appeal.

## II.

The trial court's findings of fact were as follows:

"Much of the factual background of this case is uncontested. At a few points, however, sharp differences between the parties exist. In making these findings, the court will not always cite or explicitly reject conflicting testimony or evidence which it finds less credible. All the evidence has been carefully considered nevertheless. With this preamble, the court finds as follows:

"1. The defendant was at all times prior to May 29, 1985 a Connecticut corporation engaged in agriculture, specifically the planting, cultivation and harvesting of tobacco. Defendant owns and operates a tobacco farm in Hadley, Massachusetts.

"2. The defendant hired and employed seasonal agricultural workers as that term is defined in AWPA, 29 U.S.C.A. § 1802(1),

to plant, cultivate and harvest the tobacco crop on the Hadley farm from 1984 to the present.

"3. The defendant, with respect to the operation of the Hadley farm, at all times relevant to the findings made in this memorandum, was subject to the provisions of AWPA which govern the hiring and employment of seasonal agricultural workers, as well as to the regulations of the United States Department of Labor promulgated pursuant to that statute.

"4. Plaintiffs Colon, Morales and Vazquez are Hispanic and reside in Holyoke, Massachusetts. Plaintiff Perez is Hispanic and resides in Springfield, Massachusetts.

"5. Plaintiff Acevedo is Hispanic and, at the time of trial, resided in Puerto Rico. During the time of his employment by defendant, he resided in Holyoke. Plaintiff Acevedo did not appear at trial in this matter.

"6. None of the plaintiffs speak English; they are all Spanish speaking.

"7. None of the plaintiffs was required by his employment with defendant to be absent overnight from his permanent place of residence.

"8. All the plaintiffs were hired by the defendant to work as seasonal agricultural workers on the Hadley tobacco farm in April of 1985.

"9. At the time they were hired, each plaintiff gave his name, address, Social Security number, marital status and date of birth. Plaintiffs were also given general information about wage rates, depending on the type of work to be done, lunch and other breaks and the days normally worked.

"10. It is the hope and expectation that, in general, seasonal workers will work for the entire season, which ends in November. However, at the time of hiring, the plaintiffs were given no specific information and no undertaking was made by the defendant with regard to any term of employment.

"11. Defendant's employee, James DeNofrio, the superintendent of the Hadley farm, hired the plaintiffs in April of 1985 and was the person generally responsible for their supervision during the time of their employment. DeNofrio does not speak or understand Spanish.

"12. DeNofrio did not describe to employees in any detail company policies relating to absenteeism, work beyond the normal 8–hour day and weekend work. It was the defendant's policy, however, not to *require* employees to work on weekends, although they might be requested to do so voluntarily. DeNofrio opined, however, that employees probably did not understand this policy.

"13. In fact, the plaintiffs understood that, while they might be required to work beyond the 8–hour period during the week, weekend work was voluntary.

"14. Plaintiffs were paid $3.37 per hour for the work on the Hadley farm in 1985. No increased compensation was given for hours worked in excess of 40 in any given work or in excess of 8 in any given day.

"15. The plaintiffs, except for Morales, who occasionally drove his own vehicle, used a bus provided by the defendant to get to and from work.

"16. The seasonal work force at the Hadley farm began gradually expanding in March of 1985. At that time, two or three workers were hired to work in greenhouses. In early April, six or seven additional workers were hired to put up screens or netting to shade tobacco plants. By the end of April the work force was expanded to 30 or 35 to begin transferring tobacco from greenhouses into the fields. This transplanting period is a particularly busy and critical time for the farm. It is completed by the end of May and the work load for the farm slackens somewhat until early July, when harvest begins. The work season ends around November.

"17. Up through the week of May 24, 1985 the record for attendance of the five plaintiffs at the defendant's farm had been good. For the week ending May 24, 1985 the five plaintiffs had all worked in excess of 40 hours: Morales had worked 59 hours, Acevedo 42.5, Vazquez 62, Colon 53.5 and Perez 50.5.

"18. By the end of the work day on Friday, May 24, 1985, all the transplanting had been completed except for three rows requiring about a half-day of work. The upcoming weekend included the Memorial Day Monday holiday.

"19. At the end of the work day, DeNofrio announced to the entire work force that planting had to be completed the following work day and asked the entire work force to report the following day, Saturday, for work.

"20. In response to this announcement, one of the plaintiffs, Vazquez, informed DeNofrio, in front of the entire work force and within hearing of some of the co-plaintiffs, that he had to go to New York City for the weekend to visit relatives and asked for permission to be absent the next day.

"21. In response to the request of Vazquez, DeNofrio stated that if he went to New York, he should stay there. This remark was made seriously.

"22. As of Friday, May 24, 1985, the farm had a full complement of necessary seasonal workers given the amount of work then underway.

"23. None of the plaintiffs reported for work on Saturday, May 25, 1985, Vazquez because he was in New York and the others because they were tired.

"24. Nine workers, including all five plaintiffs, were terminated effective May 24, 1985.

"25. Four of the five plaintiffs (excepting Morales who drove his own vehicle) took the company bus to work on Tuesday, May 28, 1985, the day after the holiday. These four noticed that there were eight new workers on the bus. These workers had been solicited by other workers at the request of DeNofrio to replace workers who failed to appear for Saturday work. It was not happenstance, as the defendant appears to suggest, that these eight new workers appeared Tuesday morning ready for work.

"26. All five of the plaintiffs appeared at the Hadley farm to resume work [on] Tuesday, May 28, 1985, the day after the Memorial Day holiday. However, none of their names was called in the morning role call.

"27. When they inquired as to why their names were not called, plaintiffs were informed that they had been terminated for failing to appear for work on Saturday.

"28. After receiving this information, the plaintiffs all immediately left the farm and sought legal assistance from the New England Farmworkers Council and Western Massachusetts Legal Services, Inc.

"This hotly contested factual area deserves some comment. The court is basing its conclusion that the plaintiffs appeared on May 28 on the credible testimony of four of the five plaintiffs themselves, the deposition testimony of employee Bowman, the manner of notation in the ledger book, the fact that the plaintiffs all immediately, the same day, sought legal assistance, the far from fortuitous fact that eight new employees appeared on Tuesday, and the employees' previous work history. Although there is some contrary evidence, the overwhelming weight of the credible evidence is that these five plaintiffs were fired for failing to appear for Saturday work, and that they were first informed of this when they appeared to resume working on the Tuesday following the Memorial Day weekend.

"29. It is undisputed that company policy was that Saturday work is optional and, in addition, that a one-day unexplained absence was not grounds for termination. The discharge of the plaintiffs was therefore in violation of defendant's policy and breached the terms and conditions of plaintiffs' employment.

"30. The defendant was aware of its responsibility to obtain and display certain posters setting forth employee rights pursuant to AWPA. However, defendant and its employees, in the spring of 1985, maintained no written records of posters displayed on the Hadley farm. The defendant's employee responsible for obtaining and putting up the poster relied on an employee of the Connecticut State Department of Labor to obtain and provide him with all required posters. Defendant's em-

ployee did not confirm that he had all necessary posters with the local office of the U.S. Department of Labor.

"31. The necessary AWPA information posters were not properly displayed by defendant in the spring of 1985.

"Again, this point deserves some comment. While contrary testimony exists in the record, the court credits the unanimous, credible testimony of the plaintiffs and notes the rather lackadaisical approach of the defendant to this responsibility as well as the strangely fresh appearance of the allegedly two- or three-year-old poster which is supposed to have been displayed at the time, in concluding that plaintiffs have the stronger case on this point.

"32. Generally, it is the defendant's policy to pay off discharged employees on the day of their discharge.

"33. Plaintiffs were not paid their final wages on May 28, 1985, when they were notified that they had been discharged, but received their final wages on May 31, 1985, the next regular payday.

"34. After their firing, the plaintiffs all made reasonable efforts to locate new employment.

"35. The method of calculation used by plaintiffs' counsel to determine damages, by calculating plaintiffs' reasonably expected income and deducting money actually earned, is generally fair and reasonable. However, the court is not persuaded that the loss of expected unemployment compensation is a proper component of actual damages. Based upon these calculations, the court finds that plaintiff Perez sustained actual damages in the amount of $1,475.70, plaintiff Morales suffered actual damages in the amount of $2,602.75, plaintiff Vazquez suffered actual damages in the amount of $2,202.75, plaintiff Colon suffered actual damages in the amount of $2,469.75 and plaintiff Acevedo suffered actual damages in the amount of $2,882.75."

Magistrate's Memorandum of Decision and Order at 2–9 (emphasis in original).

On September 16, 1988, the Court issued the initial judgment entered pursuant to the Magistrate's Memorandum of Decision and Order. There was an Amended Judgment issued on September 21, 1988. Following this, on September 23, 1988, plaintiffs/appellees filed a motion to amend the judgment to assess prejudgment interest. On October 4, 1988, defendant/appellant incorrectly filed a notice of appeal with the First Circuit. Defendant addressed this misfiling with its October 7, 1988 notice of appeal to this Court in accordance with its consent. On October 20, 1988, this Court issued an Order recognizing that the case was "before the Court on an appeal from the amended judgment entered by the Magistrate on September 21, 1988." That Order also set a briefing schedule. The Magistrate denied plaintiffs' motion to amend on October 25, 1988. Plaintiffs then filed with this Court their notice of cross appeal concerning the prejudgment interest issue on October 27, 1988.

On November 2, 1988 the First Circuit issued an Order noting that "it appears that this court may not have jurisdiction to consider the appeal because a motion to amend judgment was outstanding at the time the notice of appeal was filed and hence the notice of appeal has no effect. *See* Fed.R.App.P. 4(a)(4)." The appeal with the First Circuit was subsequently dismissed by stipulation.

### III.

*A. Motion to Dismiss*

Appellees attack this Court's jurisdiction over the appeal based on the ineffectiveness of appellant's October 7, 1988 notice of appeal. Appellees maintain that in accordance with the holding in *Osterneck v. Ernst & Whinney*, —— U.S. ——, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989), and the observation of the First Circuit in this case, a notice of appeal filed during the pendency of a motion to alter or amend the judgment under Fed.R.Civ.P. 59, such as plaintiffs' motion for prejudgment interest, "shall have no effect." *Id.;* 109 S.Ct. at 988. Therefore, appellees posit, appellant's appeal should be dismissed as jurisdictional deficiency because appellant has failed to file a timely notice of appeal. *Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978).

Appellant responds with myriad *ipse dixit* arguments contriving various interpretations of its conduct in supposedly attempting to perfect the appeal which should be construed as tantamount in some way to filing of adequate notice. Putting aside this obfuscating quibble of appellant's, for the reason set forth below the Court does not see fit to impose the harsh sanction of dismissal.

It is true that this Court acknowledged the appellate status of this matter with its October 20, 1988 Order. While the Court's recognition may have been based on appellant/defendant's untimely October 7, 1988 notice of appeal, the Court's apparent undertaking of the appeal created a basis for reasonable reliance on appellant's part that it was in step with the process required to take its appeal. The *Osterneck* case in fact pointed out that *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), stood for the proposition that "where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done," this may excuse the petitioner's failure to file an effective notice of appeal. 109 S.Ct. at 993. While the actions of appellant may not have postponed the deadline for filing if properly done and the Court's action may not be considered some form of specific assurance, the Court considers the situation created by its Order acknowledging the appeal to have provided a " 'unique circumstanc[e]' " excusing the lack of a timely and effective filing of the notice of appeal. *Thompson*, 375 U.S. at 387, 84 S.Ct. at 399 (quoting *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 217, 83 S.Ct. 283, 285, 9 L.Ed.2d 261 (1962)). Accordingly, the motion to dismiss shall be denied.

### B. The Merits

1. Appeal On Findings of Unjustified Termination and Failure To Post Required Signs and Award of Statutory Damages

Pursuant to 28 U.S.C. § 636(c)(4) and the parties' consent thereunder, the Court plays the role of a court of appeals. Therefore, the Magistrate's findings of fact are reviewable only for clear error. Fed.R. Civ.P. 52(a); *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Foggs v. Block*, 722 F.2d 933, 938 (1st Cir.1983), *rev'd on other grounds sub. nom. Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985); *Lynch v. Dukakis*, 719 F.2d 504, 513 (1st Cir.1983). The same standard of review applies to mixed questions of law and fact. *Foggs*, 722 F.2d at 938. The question the Court must consider then is whether "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Based upon the Court's review, appellant has failed to show clear error in the findings of unjustified termination and failure to post or the award of statutory damages.

■ The pertinent law regarding "working arrangements" provides: "No farm labor contractor, agricultural employer, or agricultural association shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association with any seasonal agricultural worker." 29 U.S.C. § 1832(c). There is no precise definition of "working arrangement" set forth in the statutes. The regulations only reiterate that there may be no unjustified violation of a working arrangement, also stating: "Written agreements do not relieve any person of any responsibility that the person would otherwise have under the Act or these regulations." 29 C.F.R. § 500.72(a) and (b). One of the main stated purposes of the AWPA is to "assure necessary protections for migrant and seasonal agricultural workers...." 29 U.S.C. § 1801.

Appellant does not contest the existence of its "policy" of voluntary or optional weekend work or the general knowledge of this policy among the workers, including plaintiffs. Instead, it contends that this weekend work policy was never explicitly

made a part of the "working arrangement." It may be true that there was no written agreement handed over to the workers including this provision. However, given the undisputed mutual knowledge of and reliance upon this policy, it would not be fair or proper in consideration of the goal of protecting seasonal agricultural workers to exclude this understanding from the "working arrangement."

With the inclusion of this term in the working arrangement, it was, as the Magistrate found, patently unjustified for appellant to terminate appellees for their failure to report to work on the weekend. Furthermore, according to undisputed evidence, the working season ran from March to November of 1985. The "period of employment" is a required term in every working arrangement. 29 U.S.C. § 1831(a)(1)(D); 29 C.F.R. § 500.76(b)(4). *See Maldonado v. Lucca,* 636 F.Supp. 621, 626–27 (D.N.J.1986) (noting the paucity of decisional law concerning AWPA and recognizing that the growing season may set the duration of the period of employment). With even a general understanding of optional or voluntary weekend work between the employer and employees, it was certainly unjustified for appellant to violate the term of the working arrangement regarding the period of employment by firing appellees based on their failure to work on the weekend.

■ Appellant's further alternative argument, apparently not submitted before the Magistrate, flails aimlessly about in sloppy swiping circles at the Magistrate's rock solid and concise reasoning. In essence, appellant maintains that even if the voluntary weekend work policy was part of the working arrangement, it was subject to immediate unilateral change at appellant's whim. Therefore, concludes appellant, the Friday announcement of mandatory weekend work and subsequent termination of appellees was a result of appellant's change in, not its violation of, the working arrangement. Were this position given sanction under the law, there would be no violation of any working arrangement that could not be written off by unscrupulous employers as a unilateral "change" in the arrangement. *See Labor Board v. Katz,* 369 U.S. 736, 743–48, 82 S.Ct. 1107, 1111–14, 8 L.Ed.2d 230 (1962) (a collective bargaining case in which the Court recognized the various ills occasioned by the employer's unilateral actions in changing work policies). The Court views appellant's twisted argument as irresponsible and offensive. Its presentation constitutes a waste of scarce judicial resources.

■ Similarly, regarding the question of compliance with the posting of informational signs requirement, 29 U.S.C. § 1831(b), the Court finds that the Magistrate acted well within his bounds and did not commit clear error. The weighing of the various witnesses' testimony and other conceivably conflicting evidence on this issue is entirely within the province of the trier of fact. *Scarpa v. Murphy,* 806 F.2d 326, 328 (1st Cir.1986) ("Findings based on witness credibility are lodged firmly in the province of the trial court, and we are loathe to disturb them absent a compelling showing of error." (Citations omitted)); *O'Brien v. Papa Gino's of America, Inc.,* 780 F.2d 1067, 1076 (1st Cir.1986) (noting that there may only be clear error "if the factual findings are against the clear weight of the evidence...." (Citation omitted)). Also, in discussing the clearly erroneous standard of review the Supreme Court explained: " '[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' " *Amadeo v. Zant,* 486 U.S. 214, ——, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249, 261 (1988) (quoting *Anderson v. Bessemer City,* 470 U.S. at 573–74, 105 S.Ct. at 1511 (1985)). Based on an examination of the evidence and findings, the Court finds a lack of any compelling showing of error and, therefore, cannot say that the Magistrate committed clear error in finding that appellant violated the posting requirement.

■ The deferential standard of review comes into play again in addressing the

Magistrate's findings on the intentional nature of appellant's conduct in committing the determined violations. It is these findings that support the Magistrate's award to plaintiffs of statutory damages under 29 U.S.C. § 1854(c)(1). Upon review, it is evident that the Magistrate correctly interpreted the case of *Bueno v. Mattner*, 829 F.2d 1380, 1385 (6th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988), in determining the meaning of the required "intentional conduct" supporting the statutory award. Once more, the Court may not disturb the Magistrate's factual findings on this issue as there has been no compelling showing of error. Also, it appears from the findings that the Magistrate did not abuse his discretion in awarding the full amount of damages allowed under the statute. For these reasons, the statutory awards shall be upheld in their entirety.

2. Cross–Appeal on Denial of Prejudgment Interest

■ Appellees filed a motion below for prejudgment interest which the Magistrate denied summarily based on a lack of explicit statutory provision and despite appellant's apparent failure to submit any opposition to the motion. Appellees' well-supported cross appeal on this issue is now before this Court without opposition.

Considering this cross appeal's unopposed status before this Court and the authority for such awards in cases of this nature, *see Rodgers v. United States,* 332 U.S. 371, 373, 68 S.Ct. 5, 6, 92 L.Ed. 3 (1947), and, more specifically, *Montelongo v. Meese,* 803 F.2d 1341, 1354 (5th Cir.1986), *cert. denied sub. nom Martin v. Montelongo,* 481 U.S. 1048, 107 S.Ct. 2179, 95 L.Ed.2d 835 (1987) (decided under the Farm Labor Contractor Registration Act, the predecessor of AWPA), the Court shall allow appellees' request for a remand to the Magistrate to determine the amount that should be allowed in this regard with reference to the actual damages or compensatory awards exclusive of the $500.00 statutory awards. *See also Secretary of Labor v. Daylight Dairy Products, Inc.,* 779 F.2d 784, 789–90 (1st Cir.1985) (explaining allowance of prejudgment interest in Fair Labor Standards Act despite lack of specific statutory provision in case where trial court had awarded interest on damages for back wages).

IV.

In conclusion, the Court DENIES appellees' motion to dismiss. The Court also DENIES the appeal, AFFIRMING the judgment in part, upholding the findings of unjustified termination, violation of the sign posting requirements and the award of statutory damages for these violations as well as the compensatory awards. The cross appeal is ALLOWED and the case is REMANDED to the Magistrate for an assessment of prejudgment interest.

It is So Ordered.